ROSALIE BOGSETH, as Next Friend of Larry Bogseth, Jr., a Minor, Plaintiff-Appellee, v. BENJAMIN EMANUEL et al., Defendants-Appellants.

First District (6th Division) No. 1—92—4385

Opinion filed April 15, 1994.

Mark C. Fedota, Timothy J. Mahoney, and Timothy I. McArdle, all of Brinton & Fedota, of Chicago, for appellants Benjamin Emanuel and Richard Nachman.

Lisa L. Lantero, of Aries & Purmal, of Chicago, for appellants Edgewater Medical Center and Merle Simken.

William J. Sneckenberg & Associates, of Chicago (William J. Sneckenberg, of counsel), and Whalley & Kuchaes, of Merrillville, Indiana (Marshall P. Whalley, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

This cause is before us on an interlocutory appeal certified to this court pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). At issue is whether plaintiff's medical malpractice complaint, which named as the only defendant "John Doe" and named numerous health care providers as respondents in discovery, satisfies the requirements of the respondents in discovery statute (Ill. Rev. Stat. 1991, ch. 110, par. 2—402). The trial court denied defendants' motion to dismiss the action, and they appeal.

The relevant facts are as follows. On July 20, 1990, plaintiff, Larry Bogseth, Jr., a minor, by his mother and next friend, Rosalie Bogseth, filed a complaint naming as the sole defendant a fictitious individual called "John Doe" and 28 health care providers as respondents in discovery. Defendants, Doctors Benjamin Emanuel and Richard Nachman, Edgewater Operating Company, d/b/a Edgewater Medical Center, and Merle Simken, R.N., were four of the named respondents. Plaintiff's complaint was filed on the last day of the applicable statute of limitations (Ill. Rev. Stat. 1991, ch. 110, par. 13—212(b)).

The complaint alleged that on January 23, 1975, Rosalie was admitted to Edgewater Medical Center and gave birth to plaintiff on

that date. The named respondents were various health care providers who provided care prior to, during, and after plaintiff's birth. The complaint further alleged that during the period of hospitalization, plaintiff developed respiratory distress and the named respondents "cared for or should have cared for [plaintiff and Rosalie] immediately prior to, during and after the events which led to the respiratory distress." According to the complaint, plaintiff suffered permanent brain damage and cerebral palsy as a result of such distress.

Regarding the defendant, John Doe, plaintiff alleged in the complaint as follows:

"9. That JOHN DOE is an individual believed to have caused or contributed to Plaintiff's condition(s) and damages through various acts and omissions and breaches of legal duties owed to Plaintiff and which will be further delineated by the instant requested discovery.

* * *

12. That as a direct and proximate result of the negligent acts of JOHN DOE and potentially others Plaintiff has sustained significant and permanent disabling injuries which have caused and will in the future cause him to incur substantial sums *** and will cause him to have suffered severe and significant mental anguish and pain and will in the future lose employment and income due to his permanent disabilities, along with other damages."

Plaintiff prayed for money damages against defendant, John Doe, in an amount in excess of $15,000.

After conducting discovery, plaintiff sought to convert respondent Doctors Emanuel and Nachman, Edgewater Medical Center, and Simken to defendants. On August 15, 1991, Doctors Emanuel and Nachman filed a motion to dismiss the complaint pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619), contending that the complaint was a nullity because it failed to name an actual defendant. On October 30, 1991, Edgewater Medical Center and Simken joined in the motion.

On February 27, 1992, the trial court heard oral arguments on respondents' motion to dismiss and on plaintiff's motion to convert. In support of his motion, plaintiff presented the affidavits of two medical experts who indicated that defendants (then respondents in discovery) breached the applicable standard of care and that the breach of care caused plaintiff to suffer permanent brain damage. Plaintiff's counsel further advised the court that since filing the complaint, he had acquired medical records, depositions and compliance with various production requests which were given to the reviewing

experts in formulating their opinions. The court found that there was probable cause to convert Doctors Emanuel and Nachman, Edgewater Medical Center, and Simken from respondents to defendants.

As to defendants' motion to dismiss, plaintiff's counsel explained that he could have named all of the respondents as defendants when the complaint was initially filed but did not because he wanted to avoid the lengthy and difficult process of "trying to figure out who *** the proper defendants [were]," which, in his view, was "exactly what the statute was designed to prevent." The trial court agreed with plaintiff. In rendering its decision, the court stated:

> "[I]n the nature of the thought process of respondent in discovery, it would seem that why would there have to be at least one known defendant if the thought for a respondent in discovery is to not sue anybody unless there's some discovery involved that you could make a good-faith pleading on."

Accordingly, the court granted plaintiff's motion to convert pursuant to section 2—402 and denied defendants' motion to dismiss.

In relevant part, section 2—402 provides as follows:

> "The plaintiff in any civil action may designate as respondents in discovery in his or her pleading those individuals or other entities, *other than the named defendants*, believed by the plaintiff to have information essential to the determination of who should properly be named as additional defendants in the action.
>
> Persons or entities so named as respondents in discovery shall be required to respond to discovery by the plaintiff in the same manner as are defendants and may, on motion of the plaintiff, be added as defendants if the evidence discloses the existence of probable cause for such action.
>
> * * *
>
> A person or entity named as a respondent in discovery in any civil action may be made a defendant in the same action at any time within 6 months after being named as a respondent in discovery, even though the time during which an action may otherwise be initiated against him or her may have expired during such 6 month period." (Emphasis added.) Ill. Rev. Stat. 1991, ch. 110, par. 2—402.

The precise issue presented in this case—whether "John Doe" may properly be considered a "named defendant" under section 2—402—is one of first impression in this State. Defendants contend that plaintiff's complaint was a nullity because it failed to name as the defendant an existing person or entity. Plaintiff contends, on the other hand, that the spirit and purpose of the statute allow the naming of a John Doe defendant where, as here, the complaint alleged actionable conduct and monetary damages were sought.

In support of their contention, defendants cite *Volkmar v. State Farm Mutual Automobile Insurance Co.* (1982), 104 Ill. App. 3d 149, 432 N.E.2d 1149, and *Bavel v. Cavaness* (1973), 12 Ill. App. 3d 633, 299 N.E.2d 435. In both cases, the court dealt with the legal proposition that the capacity to be sued exists only in persons in being and not in those who are dead or who have not yet been born. The court held that proceedings instituted against an individual who was deceased at the time the suit was filed were a nullity. Such proceedings were, in the court's view, void *ab initio* and did not invoke the jurisdiction of the trial court. *Volkmar*, 104 Ill. App. 3d at 151, 432 N.E.2d at 1151; *Bavel*, 12 Ill. App. 3d at 637, 299 N.E.2d at 438.

We do not disagree with the *Volkmar* and *Bavel* holdings. However, we do not consider them to be controlling in the present case because neither case called into play section 2—402. While, as *Volkmar* and *Bavel* make clear, jurisdiction to sue unknown or fictitious persons is not conferred by the common law, it may be conferred by some express statute. (*Hailey v. Interstate Machinery Co.* (1984), 121 Ill. App. 3d 237, 459 N.E.2d 346.) The question thus becomes whether section 2—402 may be interpreted as conferring such jurisdiction.

Section 2—402 is susceptible to two differing and, in our view, reasonable interpretations with respect to the meaning of the term "named defendant." Defendants interpret the statute as requiring at least one *identifiable* health care provider who is charged with medical negligence to be named as a defendant. Plaintiff, on the other hand, interprets the statute as not requiring an identifiable health care defendant, so long as actionable conduct is alleged and monetary relief is sought in the complaint. We have previously held that a statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. (*Hyatt Corp. v. Sweet* (1992), 230 Ill. App. 3d 423, 594 N.E.2d 1243.) Such is the case here. We find nothing in the language of section 2—402 which suggests that the legislature intended to limit "named defendants" solely to identifiable health care providers. Because nothing in the statute's language precludes an action against a fictitious defendant, it is appropriate for us to examine sources other than the language for evidence of the legislature's intent.

It is well settled that the primary rule of statutory construction is to ascertain and effectuate the intent of the legislature. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 469 N.E.2d 167.) Where the meaning of all or a portion of a statute is not clear from the statutory language itself, the court may properly consider the reason

and necessity for the law, the evils which the legislature sought to remedy and the purposes intended to be accomplished. (*Harvel v. City of Johnston City* (1992), 146 Ill. 2d 277, 586 N.E.2d 1217; *Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437.) We may properly presume that the legislature had a definite purpose in enacting the statute and drafted the statute so that each part would be in harmony with that purpose. (*Harvel*, 146 Ill. 2d at 283, 586 N.E.2d at 1220.) It follows that the general purpose of the whole act shall control and that all the parts shall be interpreted consistently with this purpose. (*Harvel*, 146 Ill. 2d at 284, 586 N.E.2d at 1220.) As a rule, a statute should be construed so as to give it a reasonable meaning and in the most beneficial way to prevent absurdity or hardship. (*Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 588 N.E.2d 1111.) Finally, where the letter of a statute conflicts with the spirit of it, the spirit will be controlling. *Hyatt Corp.*, 230 Ill. App. 3d at 434, 594 N.E.2d at 1250.

An effective means of ascertaining the intent underlying specific legislation is to analyze the legislative history, including debates of legislators conducted on the floor of the General Assembly. (*Morel v. Coronet Insurance Co.* (1987), 117 Ill. 2d 18, 509 N.E.2d 996; *Hyatt Corp.*, 230 Ill. App. 3d at 430, 594 N.E.2d at 1247.) The legislative history of section 2—402 indicates that its purpose was to provide plaintiffs in medical malpractice actions with a means of filing suit without naming everyone in sight as a defendant. Section 2—402 is a unique statute which one legislator referred to as the "key Amendment to the entire malpractice package." (79th Ill. Gen. Assem., House Proceedings, June 10, 1976, at 35 (statement of Representative Leinenweber).) It was considered a "new and innovative idea" which had not been adopted in any other state. 79th Ill. Gen. Assem., House Proceedings, June 10, 1976, at 33 (statement of Representative Beaupre).

In enacting section 2—402, the legislature recognized that, on the one hand, physicians need protection from frivolous suits or suits in which everyone even remotely connected with the plaintiff's health care is named as a defendant. It was believed by the legislature that merely naming someone as a defendant in a medical malpractice suit contributed to the spiraling cost of medical malpractice insurance. The legislature, in fact, considered evidence that "the insurance carriers have arbitrarily assessed a 15 percent surcharge on [a medical practitioner's] premium for each time that he or she is named in a medical malpractice suit." (79th Ill. Gen. Assem., House Proceedings, June 10, 1976, at 35 (statement of Representative Houlihan).) On the other hand, injured plaintiffs encounter grave

difficulties in determining the involvement of each person and thus the previous system encouraged the naming of "everyone in sight" as defendants. Section 2—402 was meant to offer an effective way for plaintiffs to explore, by whatever means, the circumstances leading up to the injury and the roles, if any, played by the respondents in discovery.

Prior to the enactment of section 2—402, one of the sponsoring legislators stated that the goals of the medical malpractice reform were to "in a sense, adjust the tort system in this state to the point where it would remove the frivolous suits, remove the embarrassment and some abuses which have taken place in that field and at the same time, give adequate and strong and consistent protection to those who have been injured through medical negligence on someone's part." (79th Ill. Gen. Assem., House Proceedings, June 11, 1976, at 17 (statement of Representative Washington).) It was hoped that section 2—402 would be a useful tool in reaching that end.

Further evidence of the legislature's intent in enacting section 2—402 can be found in the Historical and Practice Notes accompanying the provision. The Notes state that the procedure outlined in section 2—402 was "designed to reduce the number of individuals actually made defendants in [medical malpractice] actions by giving the plaintiff a mechanism for conducting efficient and effective discovery concerning a malpractice claim before he has to make a decision on whom to sue." (Ill. Ann. Stat., ch. 110, par. 2—402, Historical & Practice Notes, at 342 (Smith-Hurd 1983).) Significantly, the use of a "John Doe" defendant under this statute was contemplated by the sponsoring legislator, and the possibility that such a defendant might be named was made known to the legislature, as the following colloquoy reveals:

"REP. LEINENWEBER: Representative Beaupre, would it be possible to file a John Doe lawsuit and proceed without having to name any doctor or a medical care provider at all under this Amendment and then proceed for discovery?

REP. BEAUPRE: I think the way the Amendment is written, that it would." (79th Ill. Gen. Assem., House Proceedings, June 10, 1976, at 35.)

Shortly after these comments were made, the legislature voted to enact section 2—402.

The courts of this State are in unanimous accord with our understanding of the legislature's intent underlying section 2—402. See, *e.g.*, *Perry v. Rush-Presbyterian-St. Luke's Medical Center* (1988), 178 Ill. App. 3d 564, 533 N.E.2d 437; *Ingle v. Hospital Sisters Health System* (1986), 141 Ill. App. 3d 1057, 491 N.E.2d 139; *Flores v. St.*

*Mary of Nazareth Hospital* (1986), 149 Ill. App. 3d 371, 502 N.E.2d 1; *Clark v. Brokaw Hospital* (1984), 126 Ill. App. 3d 779, 467 N.E.2d 652; *Roe v. Little Co. of Mary Hospital* (N.D. Ill. 1992), 815 F. Supp. 244.

When the language of section 2—402 is construed in light of the policies which motivated the legislature to enact it, it is apparent to us that the legislature intended to permit plaintiffs, at least in some circumstances, to name a "John Doe" defendant. The present case is, in our view, the very sort of situation in which the naming of such a defendant was proper. As plaintiff's counsel acknowledged, he could have named all 28 respondents in discovery as defendants, or just one, and avoided having to face the present challenge in this court. In an attempt to comply with the spirit of section 2—402, however, counsel in drafting his complaint chose not to name as a defendant any of the many medical practitioners who cared for plaintiff at or about the time of the alleged injury because he did not have sufficient evidence at that point to support an allegation of wrongdoing against any of them. Counsel instead chose the more conservative approach of initially naming as the defendant a fictitious individual and the 28 identified medical practitioners as respondents in discovery, recognizing that he could convert some or all of the respondents to defendants when he possessed evidence to support "an honest and strong suspicion" of wrongdoing. *Ingle*, 141 Ill. App. 3d at 1065, 491 N.E.2d at 142.

Defendants assert that the more "conservative" approach would have been for plaintiff to arbitrarily select one of the 28 respondents in discovery to name as the defendant in the action, regardless of whether evidence existed to support an allegation of wrongdoing against that defendant. They argue that this approach would have properly preserved the cause of action. We reject this approach as it is the antithesis of the procedure the legislature was aiming for when it voted to enact section 2—402.

Defendants argue that other appellate courts in this State have interpreted the statute as *requiring* this approach. The cases defendants cite, however, are not on point with the issue before us. In each of those cases—*Gonzales v. Pro Ambulance Service* (1991), 219 Ill. App. 3d 284, 579 N.E.2d 1184, *Armour v. Petersen* (1991), 219 Ill. App. 3d 289, 579 N.E.2d 1188, and *Jacobs v. Abbott Laboratories* (1991), 213 Ill. App. 3d 998, 572 N.E.2d 1231—the plaintiff failed to name *any* defendant in the complaint; only respondents in discovery were named.

In *Gonzales*, the plaintiff filed a document labeled "complaint in discovery" against persons and entities described as "respondents." The plaintiff sought discovery against each respondent to determine

whether each should be named as a defendant in the cause of action. The respondents moved to quash the discovery and dismiss the complaint in discovery on the ground that the complaint was legally insufficient because it failed to name a defendant. The trial court agreed with respondents that the complaint was legally insufficient, and the appellate court affirmed. This court concluded that "a complaint naming only respondents in discovery is not a complaint at law, as it does not charge actionable conduct or seek damages." (*Gonzales*, 219 Ill. App. 3d at 286-87, 579 N.E.2d at 1186.) The court held that the clear language of section 2—402 required the naming of at least one defendant.

The *Jacobs* and *Armour* courts reached the same result. The courts concurred in the view of the *Gonzales* court, that section 2—402 clearly and unambiguously contemplates the existence of a named defendant. We too read the statute as requiring a plaintiff to name at least one defendant. It is not with this point, however, that we find the statute to be ambiguous. It is with the term "named defendants" that the ambiguity lies. As the foregoing discussion makes clear, however, the statute's legislative history supports the resolution of this ambiguity in favor of allowing, under some circumstances, the naming of a "John Doe" defendant.

We believe the intent of the legislature will be effectuated by upholding the trial court's order granting plaintiff's motion to convert and denying defendants' motion to dismiss. Were we to rule against plaintiff, we would be penalizing him for engaging in the very sort of conduct that the legislature intended to encourage in enacting section 2—402, that is, delaying naming medical practitioners as defendants in malpractice actions until such time as "probable cause" exists to support the allegations of wrongdoing. The spirit of section 2—402 is clearly to promote the kind of conservative approach carried out by plaintiff in the present case. We are obligated to construe each part of the statute in a manner which harmonizes with the general purpose of the statute as a whole (*Harvel*, 146 Ill. 2d at 283, 586 N.E.2d at 1220), and in a manner which prevents absurdity or hardship (*Sookhakitch*, 146 Ill. 2d at 486, 588 N.E.2d at 1115). By interpreting the phrase "named defendant" as encompassing, in some instances, a fictitious John Doe, we believe these obligations are fulfilled.

We do not, however, interpret section 2—402 as bestowing unfettered authority upon plaintiffs to name fictitious defendants in every cause of action filed. To the contrary, where an identifiable defendant exists, he or she (or it) should be named. Moreover, where the complaint fails to raise a justiciable controversy, that is, where

actionable conduct is not charged or monetary damages sought, a party may not utilize the special provisions of section 2—402. The purpose of this statute is not to provide parties with a means of engaging in "fishing expeditions" in search of someone to sue or a theory on which to base a claim. Section 2—402 makes clear that a "civil action" must already exist before one may call into play its provisions.

In the present case, plaintiff's complaint clearly reveals the existence of a "civil action." The complaint alleged actionable conduct, namely, negligence in the care and treatment he received prior to, during and after his birth which caused him to sustain permanent brain damage, for which monetary damages were sought. In our view, the language of the complaint was sufficiently specific to alert the named respondents in discovery that an actual controversy existed and that they might later be named as defendants in the action.

As a final matter, we are obliged to comment on a bill which recently failed in the legislature that would have amended section 2—402 to expressly allow a civil action to be "commenced by filing a pleading naming a fictitious person or entity as the defendant." (88th Ill. Gen. Assem., House Bill 1369, 1993 Sess.) Defendants regard the failure of this bill as evidence that the legislature, in enacting section 2—402 more than a decade earlier, intended to preclude in all circumstances the use of a fictitious individual as a named defendant. We do not agree. The possible reasons for the bill's failure are many, not the least of which is the possibility that many of the legislators believed the statute already permitted the use of a John Doe defendant. Indeed, the statute's sponsor stated that such a scenario was contemplated in light of "the way the [statute was] written." (79th Ill. Gen. Assem., House Proceedings, June 10, 1976, at 35 (statement of Representative Beaupre).) The United States Supreme Court has echoed similar sentiments with respect to the interpretation of subsequent legislative *inaction*. See, *e.g.*, *Pension Benefit Guaranty Corp. v. LTV Corp.* (1990), 496 U.S. 633, 650, 110 L. Ed. 2d 579, 597, 110 S. Ct. 2668, 2678 ("It is a particularly dangerous ground on which to rest an interpretation of a prior statute when [the subsequent history] concerns *** a proposal that does not become law. [Citation.] Congressional inaction lacks 'persuasive significance' because 'several equally tenable inferences' may be drawn from such inaction, 'including the inference that the existing legislation already incorporated the offered change.' [Citation]").

Moreover, while a few legislators voiced concern that the proposed amendment to section 2—402 would open the door to

"fishing expeditions," the comments of a few "who in their zeal to defeat a bill *** [may] understandably *** overstate its reach" (*Ernst & Ernst v. Hochfelder* (1976), 425 U.S. 185, 204 n.24, 47 L. Ed. 2d 668, 683 n.24, 96 S. Ct. 1375, 1386 n.24) are not controlling on the question of the legislature's intent in enacting the statute. The Supreme Court has stated that " 'the views of a subsequent [legislature] form a hazardous basis for inferring the intent of an earlier one.' [Citation.]" (*Consumer Product Safety Comm'n v. GTE Sylvania, Inc.* (1980), 447 U.S. 102, 117, 64 L. Ed. 2d 766, 778, 100 S. Ct. 2051, 2061.) In the court's view, "subsequent legislative history will rarely override a reasonable interpretation of a statute that can be gleaned from its language and legislative history prior to its enactment." *GTE Sylvania*, 447 U.S. at 118 n.13, 64 L. Ed. 2d at 778 n.13, 100 S. Ct. at 2061 n.13.

In applying the foregoing principles of statutory construction to the present case, we conclude that the failure of House Bill 1369 does not signify the legislative intent underlying section 2—402 espoused by defendants. Because a reasonable interpretation of that section can be "gleaned" from its language and from its own legislative history, we are obliged to end our inquiry there.

For the foregoing reasons, the trial court's order granting plaintiff's motion to convert respondents Doctors Emanuel and Nachman, Edgewater Medical Center, and Simken to defendants, and denying defendants' motion to dismiss is affirmed.

Judgment affirmed.

EGAN, P.J., and GIANNIS, J., concur.