NOKOMIS QUARRY COMPANY, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants.

Fifth District    No. 5—97—0216

Opinion filed March 25, 1998.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellants.

Keith W. Casteel and William J. Priest, both of Samuels, Miller, Schroeder, Jackson & Sly, of Decatur, for appellee.

JUSTICE KUEHN delivered the opinion of the court:

We are faced with one dispositive issue in this case: Whether two machines that plaintiff, Nokomis Quarry Company, uses in its quarry operation qualify for a manufacturing exemption from the use tax imposed by the Illinois Use Tax Act (the Act) (35 ILCS 105/1 *et seq.* (West 1994)). Specifically, defendant, the Department of Revenue of the State of Illinois (Department), appeals from the Montgomery County circuit court's order, upon administrative review, reversing the Department's decision that plaintiff's crawler dozer and wheel loader are not exempt from the use tax. We affirm.

The Department's decision is based upon undisputed facts. Plaintiff owns and operates a limestone quarry in Montgomery County. The quarry's limestone deposit sits in two layers separated by a layer of shale. The upper layer of limestone is buried underneath approximately 12 to 15 feet of soil. Once the soil is extracted, plaintiff removes the limestone by blasting with explosives. Its blasting method involves the systematic drilling of holes, the filling of these holes with an explosive charge, and the detonation of that charge. This explosion creates limestone fragments called "shot rock." After the explosion, plaintiff uses a D135A crawler dozer to push the shot rock off whatever ledge remains after the blast. Plaintiff then utilizes a WA-500 wheel loader to pick up the shot rock and transport it to a "crusher-sorter" machine, which crushes and/or sorts the rock into various sizes, as necessary. The crawler dozer and wheel loader are exclusively used for these purposes.

After an audit, the Department issued two tax-liability notices to plaintiff, assessing use tax on the crawler dozer and wheel loader for the period of January 1, 1991, to April 30, 1994. Plaintiff filed a timely protest to these notices, claiming that the two machines were used in manufacturing and, thus, were exempt from use tax.

On February 7, 1996, an administrative hearing was held on the issue of whether the two machines qualified for the manufacturing exemption from the use tax. Plaintiff presented the uncontroverted testimony of both its general manager, Ron Koehler, and a civil engineering expert, Richard Barksdale. Both Koehler and Barksdale testified that the blasting technique plaintiff utilizes is a form of crushing and that the resulting shot rock's size is determined by the placement of the explosive charges. Koehler further stated that the charges are placed 10 feet apart in order to produce shot rock of less than 150 pounds, in compliance with state "stone fill" specifications. The stone fill is used for erosion prevention along ditches and/or lakes. He noted that nearly all of this shot rock created by the initial blast could be sold without further processing, if warranted by

consumer demand. In plaintiff's business, approximately 40% to 50% of this shot rock is sorted and sold without additional processing. The remainder of the shot rock is crushed further to create smaller-sized products for sale.

On June 13, 1996, the Department issued its final administrative decision, finding that the crawler dozer and wheel loader did not qualify for the manufacturing exemption. The Department determined that, because the manufacturing process originated at the crusher-sorter machine, plaintiff primarily used the crawler dozer and wheel loader to extract limestone prior to the manufacturing process. On July 5, 1996, the Department issued two final assessments of use tax due, totalling $40,822.93, including interest and penalties.

On August 9, 1996, plaintiff filed its complaint for administrative review in the Montgomery County circuit court. On March 19, 1997, the circuit court reversed the Department's final decision. Its order concluded that the machines qualified for a manufacturing exemption from the use tax because the manufacturing process actually began with the blasting. The Department now appeals this order, contending that the circuit court's reversal constitutes error.

■ An administrative agency's decision may be reversed only if it is factually against the manifest weight of the evidence or legally erroneous. *Thomas M. Madden & Co. v. Department of Revenue*, 272 Ill. App. 3d 212, 215, 651 N.E.2d 218, 219 (1995). Where, as here, facts are undisputed, a tax-exemption determination is a question of law and, as such, hinges solely on an application of the proper legal standard to those facts. *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 491, 590 N.E.2d 478, 481 (1992); *Our Savior Lutheran Church v. Department of Revenue*, 204 Ill. App. 3d 1055, 1059, 562 N.E.2d 1198, 1199 (1990). Our review of an agency's statutory construction interpretation, a purely legal question, is *de novo*. *Thomas M. Madden & Co.*, 272 Ill. App. 3d at 215, 651 N.E.2d at 219.

■ Plaintiff initially contends that prior Department decisions, as well as one of our unpublished orders, collaterally estop the Department from arguing that this case's facts do not warrant the manufacturing exemption from the use tax. We recognize that, just as prior decisions of this court, "administrative decisions have *res judicata* and collateral estoppel effect where a department's determination is made in proceedings which are adjudicatory, judicial, or quasi-judicial in nature." *Marco v. Doherty*, 276 Ill. App. 3d 121, 124-25, 657 N.E.2d 1165, 1168 (1995). However, the collateral estoppel doctrine applies to the relitigation of facts, not to questions of law. *City of Chicago v. Chicago Fiber Optic Corp.*, 287 Ill. App. 3d 566,

576, 678 N.E.2d 693, 700 (1997); *Deford-Goff v. Department of Public Aid*, 281 Ill. App. 3d 888, 891, 667 N.E.2d 701, 703 (1996). This case does not require the relitigation of facts. Rather, it demands our statutory construction analysis of the Act (35 ILCS 105/1 *et seq.* (West 1994)), a question of law. Accordingly, because collateral estoppel is inapplicable, we must confront the merits of the Department's appeal.

■ Section 3 of the Act imposes a tax "upon the privilege of using in this State tangible personal property." 35 ILCS 105/3 (West 1994). However, section 3—5(18) of the Act affords certain exemptions from this use tax:

> "Use of the following tangible personal property is exempt from the tax imposed by this Act:
>
> * * *
>
> (18) Manufacturing and assembling machinery and equipment used primarily in the process of manufacturing or assembling tangible personal property for wholesale or retail sale ***." 35 ILCS 105/3—5(18) (West 1994).

For purposes of this exemption, section 3—50(1) of the Act further defines *manufacturing process* as follows:

> (1) " 'Manufacturing process' means the production of an article of tangible personal property, whether the article is a finished product or an article for use in the process of manufacturing or assembling a different article of tangible personal property, by a procedure commonly regarded as manufacturing, processing, fabricating, or refining that changes some existing material into a material with a different form, use, or name. In relation to a recognized integrated business composed of a series of operations that collectively constitute manufacturing, or individually constitute manufacturing, or individually constitute manufacturing operations, the manufacturing process commences with the first operation or stage of production in the series and does not end until the completion of the final product in the last operation or stage of production in the series." 35 ILCS 105/3—50(1) (West 1994).

A resolution of the issue before us requires our statutory construction analysis of these provisions.

■ This statutory construction analysis is two-tiered: the first tier requires construction of the statute; the second demands a determination of the applicability of the statutory exemption. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 201, 545 N.E.2d 695, 698 (1989). We must first address the issue of the statute's construction.

■ The objective in construing the manufacturing exemption stat-

ute is to determine and give effect to the legislature's intent. *Thomas M. Madden & Co.*, 272 Ill. App. 3d at 215, 651 N.E.2d at 220. The court should consider not only the statute's language but also its purposes. *Canteen Corp. v. Department of Revenue*, 123 Ill. 2d 95, 104, 525 N.E.2d 73, 77 (1988). "Statutes granting tax exemptions are to be construed strictly in favor of the taxing body and against exemption, and the party claiming an exemption bears the burden of clearly proving he comes within the statutory exemption." *Thomas M. Madden & Co.*, 272 Ill. App. 3d at 215-16, 651 N.E.2d at 220.

Mindful of this precedent for statutory review, our supreme court has already addressed the statutory construction of the identical provisions pertinent to the present case, in *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 545 N.E.2d 695 (1989). Such an analysis requires an examination of three distinct words or phrases which form the gist of section 3—5(18): (1) "tangible personal property," (2) "process of manufacturing or assembling," and (3) "primarily." *Van's Material Co.*, 131 Ill. 2d at 203, 545 N.E.2d at 699. The supreme court further expanded the analysis of this second phrase by stating that, in order to be a "process of manufacturing" as contemplated by section 3—50 of the Act, the procedure must: (1) change an existing material or materials into one with a new form, use, or name and (2) be commonly regarded as manufacturing.

■ There is no dispute in this case that plaintiff's limestone products are tangible personal property. Furthermore, the Department does not contest the proposition that if the manufacturing process begins with the initial blast, then the crawler dozer and wheel loader are used "primarily" in the manufacturing process. Therefore, the taxability of plaintiff's use of its crawler dozer and wheel loader turns on whether blasting begins the manufacturing process within the purview of section 3—50. We hold that it does.

Plaintiff produced uncontroverted evidence that the blasting procedure changed existing material into material with a new form, a new use, and a new name. The record demonstrates that the blasting either completely changes or begins the transformation of a limestone deposit with no apparent use into various sizes of limestone products with different uses.

The Department argues, however, that plaintiff failed to meet its burden of showing that the blasting process is "commonly regarded as manufacturing." The Department points to the differences between the dictionary definitions of "quarrying" and "manufacturing," as well as its own regulations and prior rulings. Based on the record before us, we cannot agree with this argument.

In *Van's Material Co.*, the supreme court noted:

"In interpreting the term 'commonly regarded' it seems evident that application of the terms of the statute is not to be guided by some hyperbolic definition of manufacture but rather is subject to commonsense interpretations based on past and current understanding. [Citations.] ***
***

*** [T]his court [has] determined that '[w]henever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place.' " *Van's Material Co.*, 131 Ill. 2d at 207-08, 545 N.E.2d at 701, quoting *Dolese & Shepard Co. v. O'Connell*, 257 Ill. 43, 45, 100 N.E. 235, 236 (1912).

We do not believe that the evidence in this case supports the glaring distinction the Department draws between "quarrying" and "manufacturing." Rather, under the particular circumstances before us, we view plaintiff's calculated blasting method as synonymous with manufacturing.

The blasting technique plaintiff utilizes is much more complicated than mere digging or haphazard rock removal. Plaintiff deliberately puts a sufficient amount of explosives in systematically placed holes in order to achieve an intended result, particularly, the production of shot rock which may be immediately marketed or further processed. This blasting method does more than simply separate the rock from the ground; it does so with specific desired results. Clearly, plaintiff bestows labor upon a limestone deposit, resulting in the limestone's assumption of new forms possessing new qualities or new combinations.

We are equally unpersuaded by the prior Department letter rulings on similar issues, which are noted in its brief. Although courts should generally give some deference to statutory interpretations promulgated by the administrative agency charged with the statute's administration and enforcement, such interpretations are clearly not binding on the court. *Van's Material Co.*, 131 Ill. 2d at 202-03, 545 N.E.2d at 699. Moreover, these letter rulings are inconsistent with other Department decisions cited by plaintiff, one of which even found that "the manufacturing process begins when explosives are used to blast the solid rock from the quarry." Department of Revenue v. Moline Consumer Co., Dept. of Rev. Adm. Hearing Div., No. 0099—5088 (November 23, 1992).

We reject that part of the Department's regulation that states, "The extractive process of quarrying does not constitute manufactur-

ing." 86 Ill. Adm. Code § 130.330(b)(4) (1994).[1] It is clear that "[a]dministrative rules can neither limit nor extend the scope of a statute." *Du-Mont Ventilating Co. v. Department of Revenue*, 73 Ill. 2d 243, 247-48, 383 N.E.2d 197, 200 (1978). This portion of the regulation unduly restricts the scope of the statute. The statute's language draws no such distinction between quarrying and manufacturing. We cannot accept that which is not contemplated by the legislature.

Indeed, both the evidence presented at the hearing and the latter portion of the very regulation upon which the Department relies indicate that plaintiff's blasting method is *commonly regarded* as manufacturing. That regulation specifically states that "the activities subsequent to quarrying such as *crushing*, washing, *sizing* and blending will constitute manufacturing." (Emphasis added.) 86 Ill. Adm. Code § 130.330(b)(4) (1994). Plaintiff produced evidence, via expert testimony and exhibit, that, by industry standards, its blasting method constitutes *crushing* to achieve a particular *size*. Given this uncontroverted evidence, plaintiff's calculated blasting method constitutes a "process of manufacturing" within the import of section 3—50.

We now turn to the second tier of our analysis: Whether plaintiff has met its burden of proving that the manufacturing exemption applies to its crawler dozer and wheel loader. The record demonstrates that plaintiff has met its burden. After the blasting, plaintiff exclusively uses the crawler dozer to push the shot rock off whatever ledge remains after the blast. Plaintiff then exclusively utilizes the wheel loader to pick up the shot rock and transport it to a crusher-sorter machine. Clearly, these machines are used primarily in the process of manufacturing within the meaning of section 3—5(18) of the Act. Therefore, we hold that plaintiff's D135A crawler dozer and WA-500 wheel loader are exempt from use tax.[2]

---

[1]This retailer's occupation tax regulation is incorporated by reference and made part of the use tax regulations pursuant to 86 Ill. Adm. Code § 150.1201 (1994).

[2]Although this case involves only a use-tax assessment, the supreme court has explained how the existence of substantially identical provisions in the Illinois Retailers' Occupation Tax Act (35 ILCS 120/1 *et seq.* (West 1994)) renders our decision today applicable to both acts. *Van's Material Co. v. Department of Revenue*, 131 Ill. 2d 196, 200-01, 545 N.E.2d 695, 699 (1989).

Accordingly, for the foregoing reasons, the judgment of the Montgomery County circuit court is affirmed.

Affirmed.

MAAG and GOLDENHERSH, JJ., concur.