SIMON ZUNAMON, as Trustee, *et al.*, Plaintiffs-Appellants, v. KENNETH E. ZEHNDER, Director of the Department of Revenue, *et al.*, Defendants-Appellees.

First District (4th Division)　No. 1—98—1459

Opinion filed September 16, 1999.

Michael D. Sher and Diane M. Anderson, both of Neal, Gerber & Eisenberg, of Chicago, for appellants.

James E. Ryan, Attorney General, of Chicago (Brian F. Barov, Assistant Attorney General, of counsel), for appellees.

JUSTICE HOURIHANE delivered the opinion of the court:

Plaintiffs, the trustees of certain taxpayer trusts, appeal an order of the circuit court affirming a decision of the Illinois Department of Revenue (Department), which determined that the trusts are not entitled to a foreign tax credit under section 601(b)(3) of the Illinois Income Tax Act (Act) (Ill. Rev. Stat. 1987, ch. 120, par. 1—101 *et seq.*) against their Illinois income tax liability for tax years prior to 1988 or against their replacement tax liability.

We reverse in part and affirm in part.

## BACKGROUND

The underlying facts are undisputed. Each trust is a "resident" of Illinois for purposes of the Act. See Ill. Rev. Stat. 1987, ch. 120, par. 15—1501(a)(20). Only tax years ending on or before December 31, 1987, are in issue. For each such year in which the trusts earned income from a state other than Illinois, *i.e.*, from a "source state," they paid income tax to the source state on the income earned there.

On their federal income tax returns, the trusts each took a section 164 deduction for income taxes paid to a source state. See 26 U.S.C.A. § 164 (West 1988). On their Illinois returns for the same years, the trusts added back the federal deduction when calculating their "base income" under the Act, and then claimed a foreign income tax credit for taxes paid to a source state. The trusts also claimed a credit against their replacement tax liability.[1]

The Department disallowed both credits. It determined that, for the tax years in issue, the trusts were not permitted to add back the federal deduction taken for source state taxes to their Illinois base income in order to preserve their ability to take the foreign tax credit.

---

[1]The replacement tax credit did not include any credit for any source state tax that was previously claimed as an income tax credit.

The Department also determined that the foreign tax credit applies only to income tax calculations and not to replacement tax calculations. The Department further rejected the trusts' arguments that disallowing the tax credits runs afoul of the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. IX, § 2), the federal due process clause (U.S. Const., amend. XIV, § 1), or the commerce clause (U.S. Const., art. I, § 8). On administrative review, the circuit court affirmed the Department's decision, and this appeal followed.

## ANALYSIS

Because the facts are undisputed and only questions of law are raised on appeal, review of the Department's decision proceeds *de novo*. *Nokomis Quarry Co. v. Department of Revenue*, 295 Ill. App. 3d 264, 267, 692 N.E.2d 855 (1998).

### Foreign Tax Credit

■ Under section 601(b) of the Act, the amount of income tax payable shall be the balance due after giving effect to, among other things, the following:

> "(3) Foreign tax. The aggregate amount of tax which is imposed upon or measured by income and which is paid by a resident for a taxable year to another state or states on income which is also subject to the tax imposed by subsections 201(a) and (b) of this Act shall be credited against the tax imposed by subsections 201(a) and (b) otherwise due under this Act for such taxable year. *** *The credit provided by this paragraph shall not be allowed if any creditable tax was deducted in determining base income for the taxable year*." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 120, par. 6—601(b)(3).

■ The "base income" of a trust is its federal taxable income. Ill. Rev. Stat. 1987, ch. 120, pars. 2—203(c), (e)(1). In computing its federal taxable income, a trust is entitled to a deduction for state income taxes. 26 U.S.C.A. § 164 (West 1988). Thus, a trust's base income necessarily reflects the federal deduction. Accordingly, a trust is precluded from taking the foreign tax credit unless it either forgoes the federal deduction for state income taxes or adds back the federal deduction when calculating its base income. However, prior to the passage of Public Act 85—1200, effective August 24, 1988, section 203 of the Act prohibited any modifications to taxable income or base income except those expressly provided therein. Ill. Rev. Stat. 1987, ch. 120, par. 2—203(h).

Public Act 85—1200 amended section 203 of the Act by providing that the taxable income of a trust may be modified by adding thereto an amount equal to the tax deducted pursuant to section 164 of the

Internal Revenue Code (IRC) (26 U.S.C.A. § 164 (West 1988)), if the trust is claiming the same tax for purposes of the foreign tax credit under section 601. However, the statutory amendment states that such modification is allowable "[f]or taxable years ending on or after January 1, 1989." Ill. Rev. Stat. 1989, ch. 120, par. 2—203(c)(2)(F).

◼ In contrast to the foregoing provisions governing the taxation of trusts, the Act provides that the base income of an individual is calculated with reference to his or her "adjusted gross income," as defined in the IRC. Ill. Rev. Stat. 1987, ch. 120, pars. 2—203(a), (e)(1). Adjusted gross income under the IRC does not include a deduction for state taxes. See 26 U.S.C.A. § 62 (West 1988). Thus, unlike a trust, an individual need not forgo the federal deduction in order to take the foreign tax credit.

With this statutory scheme in mind, we consider whether the trusts are entitled to take the foreign tax credit for the tax years in issue. The trusts argue that this court's decision in *Eisenberg v. Zehnder*, No. 1—97—0559 (1998) (unpublished order under Supreme Court Rule 23) is dispositive and requires reversal.

While the present case was pending in the circuit court, the same court had before it the *Eisenberg* case, in which certain resident trusts made the same arguments regarding their entitlement to the foreign tax credit. In *Eisenberg*, the circuit court reversed the decision of the Department, thus allowing the foreign tax credits. On appeal, we affirmed. However, while *Eisenberg* was pending before this court, the circuit court entered its ruling in the instant case. The circuit court determined that its reasoning in *Eisenberg* was faulty and affirmed the Department's decision disallowing the tax credits. The trusts contend that, based on our decision in *Eisenberg*, the Department is collaterally estopped from relitigating the meaning of the subject provisions of the Act in the case at bar.

◼ The doctrine of collateral estoppel bars the relitigation of issues decided in another action where (1) the issue decided in the prior adjudication is identical with the one presented in the present litigation; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication. *Illinois State Chamber of Commerce v. Pollution Control Board*, 78 Ill. 2d 1, 7, 398 N.E.2d 9 (1979). Although an unpublished order of the court is not precedential, it may be cited for limited purposes, including to support contentions of collateral estoppel. 166 Ill. 2d R. 23(e).

There is no question that the controlling legal issue in the *Eisenberg* case is identical to the initial issue raised in the case at bar, that there was a final judgment on the merits in *Eisenberg*, and that the

party against whom estoppel is sought—the Department—was a party in that case. However, the Department maintains that collateral estoppel applies only to the relitigation of questions of fact, not to questions of law. See *Nokomis Quarry Co.*, 295 Ill. App. 3d at 267; *City of Chicago v. Chicago Fiber Optic Corp.*, 287 Ill. App. 3d 566, 576, 678 N.E.2d 693 (1997). But see *Morris v. Union Oil Co.*, 96 Ill. App. 3d 148, 153, 421 N.E.2d 278 (1981) (collateral estoppel forecloses relitigation of issues of either fact or law logically and legally necessary in reaching prior judgment); Restatement (Second) of Judgments § 27 (1982) (collateral estoppel applies to issues of evidentiary fact, ultimate fact, and issues of law essential to prior judgment).

We need not decide whether collateral estoppel applies here. Even if the Department is not estopped from relitigating identical issues of statutory construction, we find no reason to depart from this court's analysis in *Eisenberg*. Accordingly, we reverse the Director's decision disallowing the foreign tax credits for pre-1988 tax years.

■ The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. Ordinarily, the best indicator of the legislature's intent is the language of the statute itself. *Nottage v. Jeka*, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996). Although a statute should be interpreted, if possible, so that no clause or term is rendered superfluous (*Niven v. Siqueira*, 109 Ill. 2d 357, 365, 487 N.E.2d 937 (1985)), statutory provisions must also be harmonized and inconsistent phrasing may be modified, changed or rejected to conform to legislative intent (*Certain Taxpayers v. Sheahen*, 45 Ill. 2d 75, 83, 256 N.E.2d 758 (1970)). Thus, where the letter of the statute conflicts with the spirit of the statute, the latter is controlling. *Bogseth v. Emanuel*, 261 Ill. App. 3d 685, 690, 633 N.E.2d 904 (1994), *aff'd*, 166 Ill. 2d 507 (1995). Where an unambiguous statute is amended, a rebuttable presumption exists that the legislature intended to effect a change in the law. However, where a statute is ambiguous and thus fails to disclose clearly the legislature's intent, an amendment thereto may be deemed to operate merely as a clarification of existing law. *Illinois v. Mikusch*, 138 Ill. 2d 242, 252, 562 N.E.2d 168 (1990). Here, we are faced with interpreting a statute where an ambiguity existed prior to amendment, and where the "clarifying" amendment itself cannot, in part, be harmonized with the various statutory provisions.

There is no express indication in section 601 that the legislature intended the foreign tax credit to operate differently as to the various classes of "resident" taxpayers (trusts, individuals and estates) to whom the credit is available. Further, there is no indication that the legislature intended to penalize a trust by making the tax credit unavailable simply because the trust sought to minimize its federal tax

liability by taking a deduction for state income taxes. However, prior to amendment, section 203 prohibited any modifications to base income except those expressly provided therein. Thus, because a trust was seemingly prohibited from making the very addition to base income necessary to preserve its ability to take the foreign tax credit, the Department maintains that, for the tax years in issue, a trust had to choose between the federal deduction and the foreign tax credit.

The interpretation the Department advances is at odds with the purpose behind tax credits of this type, *i.e.*, the elimination of the potential for multiple taxation of a resident's income by reverting the tax to the state that is the source of the taxed income. See 2 J. Hellerstein & W. Hellerstein, State Taxation § 20.10 (1992). While a state is under no compulsion to provide foreign tax credits (see *Balla v. Department of Revenue*, 96 Ill. App. 3d 293, 295, 421 N.E.2d 236 (1981)), the Illinois legislature has made a policy decision to do so. Accordingly, we will not construe the statute in a way that defeats this policy by making the foreign tax credit unavailable to resident trusts.

■ Therefore, we read the language in section 601, which disallows the foreign tax credit "if any creditable tax was deducted in determining base income," not as evidence that the legislature intended to restrict a trust's ability to take the foreign tax credit, but as evidence that the legislature sought to foreclose a taxpayer from using *both* the credit and the federal deduction to lessen its Illinois tax liability. Adding back the federal deduction to a trust's base income is consistent therewith. Although the Act did not, prior to amendment, expressly provide for such an addition to income, it is necessarily implied. A court will find an implied modification to income where necessary to effectuate the purpose of the Act. See *Continental Illinois National Bank & Trust Co. v. Lenckos*, 102 Ill. 2d 210, 217-18, 464 N.E.2d 1064 (1984).

The amendment to section 203 clarifies the statute to the extent that it expressly allows a trust to make the necessary addition to income in order to avail itself of the foreign tax credit. However, the amendatory language which limits its application to tax years ending on or after January 1, 1989, is problematic. The absence of any indication in the statutory language that the legislature previously intended to limit a trust's ability to take advantage of the foreign tax credit, and the policy choice of the legislature in making this credit available to all resident taxpayers, make it impossible to reconcile and give meaning to the date restriction. This leads us to conclude that the inclusion of the same was an oversight. Thus, in order to harmonize the various statutory provisions and give effect to the true intent of the legislature, we now delete from section 203(c)(2)(F) of the Act the phrase, "For taxable years ending on or after January 1, 1989."

The Department maintains that the legislative history of the amendment requires a different result and cites to *Kraft, Inc. v. Sweet*, 213 Ill. App. 3d 889, 572 N.E.2d 389 (1991), in support of this argument. In *Kraft*, prospective application of the amendment at issue found strong support in its legislative history. Here, the so-called "history" on which the Department relies consists of nothing more than a vague and ambiguous, one-sentence comment made during the third-reading of the bill that contained the amendment. It hardly amounts to a clear expression of legislative intent and is markedly different from the legislative history on which we relied in the *Kraft* decision.

For the foregoing reasons, we reverse the Department's decision which disallowed the foreign tax credit for tax years ending on or before December 31, 1987.[2]

## Replacement Tax

■ The trusts next argue that they are entitled to a credit against their replacement tax liability for income taxes paid to another state. The "Personal Property Tax Replacement Income Tax," set forth in section 201(c) of the Act, is imposed on every corporation, partnership and trust on the privilege of earning or receiving income in or as a resident of Illinois. It is measured by net income and is in addition to all other occupation or privilege taxes. Ill. Rev. Stat. 1987, ch. 120, par. 2—201(c).

Section 601 provides that the foreign tax "shall be credited against the tax imposed by [sections] 201(a) and (b)." Ill. Rev. Stat. 1987, ch. 120, par. 6—601(b)(3). Thus, by its express terms, application of the foreign tax credit does not apply to the replacement tax found at section 201(c).

The trusts argue that this result subjects the trusts to double taxation, which runs afoul of the uniformity clause of the Illinois Constitution and the due process and commerce clauses of the United States Constitution.

■ In order to survive a challenge under the uniformity clause, a "nonproperty tax classification must be based on a real and substantial difference between the people taxed and those not taxed, and the classification must bear some reasonable relationship to the object of the legislation or to public policy." *Allegro Services, Ltd. v. Metropolitan Pier & Exposition Authority*, 172 Ill. 2d 243, 250, 665 N.E.2d 1246

---

[2]Initially, pre-1989 tax years were in issue. However, because the Department had issued instructions for 1988 allowing trusts to modify their base income by adding back the federal deduction, the trusts were allowed the foreign tax credit for that year. Thus, only pre-1988 tax years were at issue in this appeal.

(1996) (*Allegro*). The legislature is given wide latitude in determining classifications for taxing purposes, and it is presumed that a statute is constitutional. The party challenging a tax classification bears the burden of demonstrating that it is arbitrary or unreasonable, and if a set of facts can reasonably be conceived that will sustain the classification, it will be upheld. *Allegro*, 172 Ill. 2d at 250-51.

The trusts argue that it is arbitrary and capricious to be treated differently than individuals, who may take a foreign tax credit to avoid multiple taxation of out-of-state income. They also argue that it is arbitrary and capricious to be treated differently than corporations and partnerships who, although subject to the replacement tax, are taxed only on their income apportioned to Illinois under article 3 of the Act.

■ It is undisputed that trusts are a distinctive class for tax purposes. Indeed, the trusts acknowledge that a trust is fundamentally different from an individual, corporation, or partnership. The object of the Act is to tax the "privilege of earning or receiving income in or as a resident of this State". Ill. Rev. Stat. 1987, ch. 120, pars. 2—201(a), (c). By virtue of their unique legal status, trusts exercise this privilege differently than individuals or other legal entities. See generally *Hanley v. Kusper*, 61 Ill. 2d 452, 461, 337 N.E.2d 1 (1975). Taxing all of their income, as residents of this state, is reasonably related to the purpose of the Act. See *National Realty & Investment Co. v. Department of Revenue*, 144 Ill. App. 3d 541, 549-51, 494 N.E.2d 924 (1986) (not granting corporations deduction allowed to other taxpayers not unreasonable or arbitrary in light of real and recognizable differences between corporations and other taxpayers). Further, the trusts do not argue that the actual tax they pay bears no reasonable relation to the privilege of earning or receiving income as a resident of this state. See *Illinois Gasoline Dealers Ass'n v. City of Chicago*, 119 Ill. 2d 391, 402, 519 N.E.2d 447 (1988).

The uniformity clause does not require that there be "perfect rationality" as to each taxpayer. Rather, it imposes only minimum standards of reasonableness and fairness between groups of taxpayers. *Geja's Cafe v. Metropolitan Pier & Exposition Authority*, 153 Ill. 2d 239, 252, 606 N.E.2d 1212 (1992). These standards have been met here.

■ We also find no due process violation. The due process clause does not prohibit a state from taxing all of its residents' income, even income earned in another state. *Curry v. McCanless*, 307 U.S. 357, 368, 83 L. Ed. 1339, 1348, 59 S. Ct. 900, 906 (1939) ("income may be taxed both by the state where it is earned and by the state of the recipient's domicile"); see also 2 J. Hellerstein & W. Hellerstein, State

Taxation § 20.10 (1992). While states commonly credit income taxes paid to other states, "this is an independent policy decision and not one compelled by jurisdictional considerations." *Oklahoma Tax Comm'n v. Chickasaw Nation*, 515 U.S. 450, 463 n.12, 132 L. Ed. 2d 400, 412 n.12, 115 S. Ct. 2214, 2223 n.12 (1995), quoting American Law Institute, Federal Income Tax Project: International Aspects of United States Income Taxation 6 (1987).

■ Finally, we find no merit to the trusts' remaining constitutional claim. The dormant or negative commerce clause is intended to prevent a state from engaging in economic isolationism. *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 420, 665 N.E.2d 795 (1996). That is to say, it prohibits state taxes and measures " 'designed to benefit in-state economic interests by burdening out-of-state competitors.' " *Geja's Cafe*, 153 Ill. 2d at 256, quoting *New Energy Co. v. Limbach*, 486 U.S. 269, 273-74, 100 L. Ed. 2d 302, 308, 108 S. Ct. 1803, 1807 (1988). Under what is commonly referred to as the *Complete Auto* test, a state tax of interstate commerce will be upheld when it is applied to an activity that has a substantial nexus with the taxing state, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the taxing state. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 51 L. Ed. 2d 326, 331, 97 S. Ct. 1076, 1079 (1977).

■ The trusts fail to cite any case in which the *Complete Auto* test has been applied to bar a state from taxing all of the income of its own residents. Indeed, the commerce clause is not intended " 'to protect state residents from their own state taxes.' " *Geja's Cafe*, 153 Ill. 2d at 256, quoting *Goldberg v. Sweet*, 488 U.S. 252, 266, 102 L. Ed. 2d 607, 620, 109 S. Ct. 582, 591 (1989). Rather, the commerce clause "protects markets and participants in markets, not taxpayers as such." *General Motors Corp. v. Tracy*, 519 U.S. 278, 300, 136 L. Ed. 2d 761, 781, 117 S. Ct. 811, 825 (1997). See also *Keller v. Department of Revenue*, 319 Or. 73, 78, 872 P.2d 414, 415-16 (1994) (*Complete Auto* does not alter rule that Oregon is entitled to tax income of its residents, including income derived from and taxed by another state); *Guzzardi v. Director, Division of Taxation*, 15 N.J. Tax 395, 408 (1995) (recognizing that in taxation of resident individuals, United States Supreme Court has not applied commerce clause principles).

The trusts have also failed to identify the interstate market or transaction purportedly implicated here. See *Tamagni v. Tax Appeals Tribunal*, 91 N.Y.2d 530, 540, 695 N.E.2d 1125, 1131, 673 N.Y.S.2d 44, 50 (1998) (prior to application of *Complete Auto* test, first step is to identify interstate market being subjected to discriminatory or burdensome taxation). It is not the mere possibility of multiple taxation that

violates the *Complete Auto* test. Rather, the test is violated "when there is a risk of multiple taxation *which places a burden on interstate commerce* that is not also borne by intrastate commerce." (Emphasis added.) *Allegro*, 172 Ill. 2d at 267. The trusts make the unsupported claim that earning income from a state outside Illinois is the "essence of interstate commerce." We cannot agree with the broad sweep of this statement and decline to find a commerce clause violation here.

## CONCLUSION

As to the foreign tax credit, we reverse the Department's decision, thus allowing the trusts to take the tax credit for the years in issue. As to the credit sought against the trusts' replacement tax liability, we affirm the Department's decision disallowing this credit.

Affirmed in part and reversed in part.

HARTMAN and THEIS, JJ., concur.