THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
JAMES C. FINKLE, Defendant-Appellant.

Second District No. 2—89—0417

Opinion filed June 6, 1991.

G. Joseph Weller and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel A. Fish, State's Attorney, of Dixon (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant, James C. Finkle, appeals from an order denying the relief sought in an application showing recovery filed by him pursuant to section 9 of the Sexually Dangerous Persons Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 105—9). Defendant contends that he was denied due process of law when the trial court refused to appoint an independent psychiatrist to examine him. The State argues that no such right exists under section 9.

Defendant was found to be a sexually dangerous person under the Act in 1985 and was committed to the Menard Psychiatric Center, a maximum-security institution operated by the Illinois Department of Corrections (Department) pursuant to section 8 of the Act (Ill. Rev. Stat. 1985, ch. 38, par. 105—8). In 1989, defendant filed an application showing recovery in which he alleged he had corrected and learned to control his unwanted desires that led to his commitment. Defendant also sent the court a letter in which he requested the court to appoint an "outside" psychiatrist to see him as he had no money or finances to pay for one. The trial court denied this request and set a date for a hearing. At the hearing, defendant requested only a conditional release to stay at a different facility and to continue counseling. (See *People v. Cooper* (1989), 132 Ill. 2d 347, 352 (*Cooper II*) (regarding conditional releases).) The court looked to the only evidence in the record, the socio-psychiatric report, in which the psychiatrist at Menard wrote he could find no evidence to demonstrate that defendant was no longer dangerous. The trial court then denied defendant's application, and he appeals.

 Defendant argues that notions of due process require that an independent psychiatrist be appointed for an indigent applicant applying for release from commitment. During a section 9 hearing, the trial court considers the socio-psychiatric report prepared pursuant to the Act by the psychiatrist, sociologist, psychologist and warden of the institution in which the applicant is confined, as well any other relevant information submitted by or on behalf of the applicant. (Ill. Rev. Stat. 1989, ch. 38, par. 105—9; *People v. Cooper* (1990), 199 Ill. App. 3d 985, 987-88 (*Cooper III*).) Testimony or reports of other psychiatrists are often a key part of the court's determination. (See *Cooper*, 199 Ill. App. 3d at 988-89.) The burden is on the defendant to prove he is no longer a danger to society in order for the court to order a release or discharge. (*People v. Hannan* (1989), 184 Ill. App. 3d 937, 944.) Defendants often have court-appointed psychiatrists. (*Cooper*, 199 Ill. App. 3d at 988; *Hannan*, 184 Ill. App. 3d at 940.) While the Act provides that the court shall appoint two psychiatrists to examine a defendant during the initial commitment proceedings (Ill. Rev. Stat. 1989, ch. 38, par. 105—4), there is no provision requiring a court to appoint a psychiatrist in a recovery proceeding. Defendant contends that since he is indigent, he will be denied key evidence to support his belief that he has recovered.

In a case cited by neither defendant nor the State, our supreme court has already issued an opinion relevant to this matter. Speaking

of the defendant's request for relief under section 9 of the Act, the court stated:

> "Defendant also seeks fees with which to hire an independent psychiatrist. There is no provision in the act entitling him to the services of an independent psychiatrist and we do not believe that such services are necessary to protect defendant's rights. There has been no showing that the psychiatrists employed by the Department of Mental Health and the Department of Public Safety will not give an honest and unprejudiced opinion of the defendant's mental condition ***." (*People v. Capoldi* (1967), 37 Ill. 2d 11, 18-19 (*Capoldi II*).)

We must determine whether, in light of recent opinions of the United States Supreme Court, the holding of *Capoldi II* is still valid.

■ Defendant bases his due process argument on the decision of the Supreme Court in *Ake v. Oklahoma* (1985), 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087. In *Ake*, the defendant was charged with the crime of first degree murder and shooting with intent to kill. Upon arraignment, defendant's bizarre courtroom behavior caused the judge to appoint a psychiatrist to examine defendant for competency to stand trial. The examining psychiatrist found defendant incompetent, and he was committed to the State mental hospital. When defendant recovered and the criminal proceedings resumed, defendant's attorney informed the court that he would raise an insanity defense and requested a psychiatric evaluation at the State's expense to determine defendant's mental state at the time of the crimes. The trial court denied such evaluation. At the guilt phase of the ensuing trial, the examining psychiatrist offered no testimony as to defendant's sanity at the time of the offense. The jury rejected the insanity defense and convicted defendant of all charges. During the sentencing hearing, the State relied on the examining psychiatrist's testimony to establish the likelihood of defendant's future, dangerous behavior. Defendant, who had no expert witnesses to rebut this testimony or give evidence in mitigation, was sentenced to death. On appeal, the Supreme Court ruled that when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one. (*Ake*, 470 U.S. at 74, 84 L. Ed. 2d at 60, 105 S. Ct. at 1091-92.) This court has recently acknowledged this principle. *People v. Kegley* (1988), 175 Ill. App. 3d 335, 340-41, citing *Ake v. Oklahoma* (1985), 470 U.S. 68, 74, 84 L. Ed. 2d 53, 60, 105 S. Ct. 1087, 1091-92.

The *Ake* court emphasized the well-established concept that, when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the fourteenth amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of poverty, a defendant is denied the opportunity to participate meaningfully in a judicial process in which his liberty is at stake. (*Ake*, 470 U.S. at 76, 84 L. Ed. 2d at 61, 105 S. Ct. at 1092.) The principle of meaningful participation had previously been extended to a "quasi-criminal" proceeding in *Little v. Streater* (1981), 452 U.S. 1, 68 L. Ed. 2d 627, 101 S. Ct. 2202, where the court held that in a paternity action the State cannot deny the putative father blood-grouping tests if he cannot otherwise afford them.

■ To implement the principle of meaningful participation, the focus is on identification of the " 'basic tools of an adequate defense or appeal.' " (*Ake*, 470 U.S. at 77, 84 L. Ed. 2d at 62, 105 S. Ct. at 1093, quoting *Britt v. North Carolina* (1971), 404 U.S. 226, 227, 30 L. Ed. 2d 400, 403, 92 S. Ct. 431, 433.) Three factors are relevant in determining if the indigent's request involves those basic tools which the due process guarantee of fundamental fairness requires for an adequate defense or appeal. The first is the private interest that will be affected by the action of the State; the second is the government's interest that will be affected if the safeguard is to be provided; the third is the probable value of the additional or substitute safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if the safeguards are not provided. *Ake*, 470 U.S. at 78-79, 84 L. Ed. 2d at 62, 105 S. Ct. at 1093-94.

■ With respect to the first part of *Ake*'s three-part test, the private interest in the accuracy of a proceeding that places an individual's liberty at risk is compelling. (*Ake*, 470 U.S. at 76, 84 L. Ed. 2d at 61, 105 S. Ct. at 1093.) While a proceeding under the Sexually Dangerous Persons Act is not a criminal proceeding but civil (*Allen v. Illinois* (1986), 478 U.S. 364, 375, 92 L. Ed. 2d 296, 308, 106 S. Ct. 2988, 2994), a defendant's liberty interest is still at stake. The Act otherwise recognizes the importance of mandating procedural safeguards usually found in criminal trials, such as the right to counsel, the right to confront and cross-examine witnesses, and the right to be found dangerous beyond a reasonable doubt. (Ill. Rev. Stat. 1989, ch. 38, pars. 105—3.01, 105—5; *Allen*, 478 U.S. at 371, 92 L. Ed. 2d at 306, 106 S. Ct. at 2993; *People v. Davis* (1984), 127 Ill. App. 3d 49,

60; see also *In re Nau* (1991), 209 Ill. App. 3d 805.) A proceeding under the Act differs from a civil commitment and requires more procedural safeguards.

■ Our supreme court in *Capoldi II* also expresses concern that no unnecessary roadblock should frustrate a defendant committed under the Act in his sole route to freedom, *i.e.*, a petition under section 9 of the Act (*Capoldi*, 37 Ill. 2d at 18). A defendant can spend years incarcerated without a sufficient hearing. (*People v. Abney* (1967), 90 Ill. App. 2d 235, 238.) Accordingly, in considering *Ake*'s first two factors, we recognize that the interest of the individual in the correct outcome of the proceeding is greater than the interest of the State in denying the appointment of a psychiatrist, an interest which we perceive to be related to the increased costs and complexity of such proceedings. However, as we discuss below, provision of psychiatric assistance sought by a defendant is not mandated by *Ake* where the value of the additional evidence generated is low or speculative. *People v. Henderson* (1990), 142 Ill. 2d 258, 343-44.

We next examine the third factor of *Ake, i.e.*, the probable value of the psychiatric assistance sought and the risk of error if the assistance is not offered. The State contends that the professionals available at the institution where defendant is confined provide diagnoses which are untainted by their employment because of the nature of their professional and fiduciary relationship with their patients. The State also asserts that the treating psychiatrists are in the best position to know if the patient has recovered. Thus, the State argues that the defendant cannot show there is a substantial risk of an unreliable result if another psychiatrist is not supplied. Defendant maintains it is unfair that he must rely upon evidence supplied by the State as his sole evidence, other than his own ineffectual statements, that he has recovered. We believe the Act itself contains adequate safeguards for defendant's rights.

■ In *People v. Sweeney* (1969), 114 Ill. App. 2d 81, we held that the socio-psychiatric report completed by the institution's professionals pursuant to the statute had inherent guarantees of trustworthiness and that the findings and opinions of these persons are important in the determination of recovery. Thus, the report is admissible even when the professionals are unavailable to appear in court. (Ill. Rev. Stat. 1989, ch. 38, par. 105—9; *Sweeney*, 114 Ill. App. 2d at 87; see *Cooper*, 199 Ill. App. 3d at 988.) In our view, under the Act, a committed defendant has the aid of well-qualified experts. The Department has superior resources and expertise to deal with sexually dangerous persons. These experts, of course, are most knowledgeable

about a defendant's problems and progress toward recovery. (*People v. Parrott* (1982), 108 Ill. App. 3d 222, 226.) Thus, the State has made available a system for the defendant to obtain psychiatric assistance as part of his recovery hearing.

In *Granviel v. Lynaugh* (5th Cir. 1989), 881 F.2d 185, which involved a trial for capital murder, a defendant whose sanity was likely to be a significant factor requested the court to appoint a psychiatrist to assist him in his defense and that such expert be unavailable to the prosecution or the court. State law required disclosure to all parties of an appointed psychiatrist's report. Defendant's request for appointment of an independent expert was denied, although the court did appoint a disinterested expert whose report pursuant to State law would be available to prosecution and defense alike. On appeal, the court stated "[w]hen a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his personal liking or receive funds to hire his own." (*Granviel*, 881 F.2d at 191-92.) The trial court was affirmed.

■ In the case *sub judice*, defendant's request for appointment of a psychiatrist alleged no particular facts which might indicate that the examining and treating doctors employed by the custodial institution would not fairly and objectively render him assistance for purposes of his recovery hearing under section 9. As noted previously, for purposes of such hearing, defendant has the right to appointment of counsel if he is indigent and the right to a jury trial. The right to appointment of counsel is an important tool for uncovering and presenting information to the trial court which could require the appointment of a psychiatrist pursuant to the third part of the *Ake* test.

Under the facts presented we find the trial court's denial of defendant's request for appointment of a psychiatrist to assist him in his recovery hearing does not pose a substantial risk of an erroneous result and, therefore, does not deny him due process of law.

For the reasons set forth above, the judgment of the circuit court of Lee County is affirmed.

Affirmed.

GEIGER and McLAREN, JJ., concur.