No. 3--01--0223

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of the 9th Judicial Circuit,

) Warren County, Illinois

Petitioner-Appellee, )

)

) No. 99--MR--3

)

PAUL E. BOTRUFF, ) Honorable

) Ronald C. Tenold

Respondent-Appellant. ) Judge, Presiding

JUSTICE HOLDRIDGE delivered the Opinion of the court:

Paul E. Botruff pled guilty to a charge of criminal sexual assault and was sentenced to four years in prison.  At the end of his imprisonment term, he was further committed to the Department of Human Services (the Department) under the Sexually Violent Persons Commitment Act (the Act) (725 ILCS 207/1 
et
 
seq.
 (West 2000)).  Subsequently, in connection with a mandatory reexamination under the Act, the circuit court conducted a probable cause hearing which Botruff was statutorily prohibited from attending.  An attorney appeared for him and requested appointment of an independent evaluator.  The judge denied the request, and Botruff filed this appeal challenging the denial.  He also challenges the constitutionality of the statute that prohibited him from attending the probable cause hearing.  For the following reasons, we reverse and remand for further proceedings.

BACKGROUND

The Act authorizes civil commitment of a person who is deemed sexually violent upon release from imprisonment for a sexually violent offense.  The State initiates the commitment process by filing a petition in the circuit court.  725 ILCS 207/15 (West 2000).  The court then conducts a hearing "to determine whether there is probable cause to believe that the [respondent] is a sexually violent person."  725 ILCS 207/30(b) (West 2000).  If the court finds probable cause, the respondent is taken into custody and transferred to an "appropriate facility" for an evaluation regarding whether he is sexually violent.  725 ILCS 207/30(c) (West 2000).  Then the issue is adjudicated at a trial.  725 ILCS 207/35 (West 2000).  If the court or a jury finds that the respondent is sexually violent, he is committed to the Department "until such time as [he] is no longer a sexually violent person."  725 ILCS 207/40(a) (West 2000).

The Department must conduct a reexamination of the respondent's mental condition within six months, and additional reexaminations must occur in at least 12-month intervals.  725 ILCS 207/55(a) (West 2000).  The purpose of these reexaminations is to determine whether the respondent has progressed enough to be conditionally released or discharged.  725 ILCS 207/55(a) (West 2000).  At the time of each reexamination, the respondent receives written notice of his right to petition the court for discharge.  The notice must contain a waiver of rights.  725 ILCS 207/65(b)(1) (West 2000).  If the respondent does not waive his right to petition for discharge, the court conducts a probable cause hearing to determine if facts exist that warrant a hearing on the issue of whether he remains a sexually violent person.  725 ILCS 207/65(b)(1) (West 2000).  "The committed person has a right to have an attorney represent him or her at the probable cause hearing, but the person is not entitled to be present at the probable cause hearing."  725 ILCS 207/65(b)(1) (West 2000).

Botruff's initial reexamination occurred in August of 1999.  Based on the examining doctor's report, the State moved for a directed finding against Botruff on the issue of probable cause.  Botruff then moved for appointment of an independent evaluator, which motion was granted.  He ultimately stipulated to the examining doctor's report and the independent evaluator's report.  Based on those reports, the judge granted the State's motion for a directed finding.

The next reexamination occurred in September of 2000.  Botruff did not waive his right to petition for discharge, and the court thus conducted a probable cause hearing.  Botruff was indigent and did not attend the hearing because his attendance was statutorily prohibited.  An attorney appeared for him and requested appointment of an independent evaluator.  The judge denied the request, stating:

"I think in order for Mr. Botruff to be independently [evaluated] there must be at least some basis for the Court to order such an independent [evaluation] other than just that he would like to be [evaluated] by another party; that there is something in the report of the [examiner] that indicates to me he is perhaps somehow biased or skewed or not accurately reporting the results of the examination, or that there are some other factors that the [examiner] has not considered in the report."  

Based on the examining doctor's report, the judge found that Botruff remained a sexually violent person and that no probable cause existed to warrant a hearing on the issue.  The judge thus ordered continued commitment of Botruff under the Act.  This appeal followed.

ANALYSIS

I. Appointment of Independent Evaluator

Botruff first claims the judge erred in denying his request for appointment of an independent evaluator during his reexamination proceedings.  This claim turns on construction of two provisions in the Act--subsections 25(e) and 55(a).  Subsection 25(e) reads:

"
Whenever
 the person who is the subject of the petition is required to submit to 
an examination under this Act
, he or she may retain experts or professional persons to perform an examination.  ***  If the person is indigent, the court 
shall
, upon the person's request, appoint a qualified and available expert or professional person to perform an examination."  (Emphasis added.)  725 ILCS 207/25(e) (West 2000).

Subsection 55(a), which deals with post-commitment examinations, reads:

"At the time of a reexamination under this Section, the person who has been committed may retain or, if he or she is indigent and so requests, the court 
may
 appoint a qualified expert or a professional person to examine him or her."  (Emphasis added.)  725 ILCS 207/55(a) (West 2000).

Under subsection 25(e), the word "shall" requires appointment of an independent expert if an indigent respondent requests one.  Under subsection 55(a), however, the word "may" places such appointment within the court's discretion despite a request from an indigent respondent.  See 
Anderson v. Financial Matters, Inc.
, 285 Ill. App. 3d 123 (1996) (noting that the word "may" signals discretional rather than mandatory action).  Botruff argues that these provisions conflict and that we should interpret subsection 55(a) as subject to the rights conferred in subsection 25(e).  The State argues that no conflict exists because subsection 25(e) applies only to pre-commitment examinations, thus excluding it from the post-commitment realm of subsection 55(a).

The fundamental cannon of statutory construction is to ascertain and effectuate the legislature's intent.  
Nottage v. Jeka
, 172 Ill. 2d 386 (1996).  The best indicator of such intent is the language the legislature used in the statute.  
Nottage
, 172 Ill. 2d 386.  Courts cannot use construction as a guise for supplying omissions, remedying defects, adding limitations, or otherwise departing from the plain meaning of a statute's language.  
Toys "R" Us, Inc. v. Adelman
, 215 Ill. App. 3d 561 (1991).  Questions of statutory construction invoke 
de
 
novo
 review.  
In re Application for Tax Deed
, 285 Ill. App. 3d 930 (1997).

We cannot adopt the State's view that subsection 25(e) applies only to pre-commitment examinations.  First, we note that section 25 as a whole is not limited to such application.  For example, one provision of the section enumerates certain rights that apply "at any hearing conducted under [the] Act" with only two exceptions.  725 ILCS 207/25(c) (West 2000).  Although both exceptions involve post-commitment hearings, the Act provides for several other post-commitment hearings that are not excepted.  See 725 ILCS 207/60(d), 65(a)(2), 65(b)(2), 90(b) (West 2000).  Such hearings clearly qualify as "any hearing conduced under [the] Act" and thus invoke rights contained in section 25.

We also note that subsection 25(e) itself contravenes the State’s asserted limitation.  According to the plain language of that subsection, it applies "
[w]henever
 the person who is the subject of the petition is required to submit to 
an examination under [the] Act
."  (Emphasis added.)  725 ILCS 207/25(e) (West 2000).  The word "whenever" indicates comprehensiveness rather than limitation.  Furthermore, the phrase "an examination under [the] Act" describes post-commitment examinations just as well as it describes pre-commitment examinations.  We will not add a limitation that the legislature did not place in the statute.  We thus conclude that subsection 25(e) requires a court to grant an indigent respondent's request for appointment of an independent evaluator during post-commitment proceedings.

In denying Botruff's request, the judge stated that the request was insufficient without additional grounds for appointing an independent evaluator (
e.g.
, evidence that the state examiner was skewed or biased).  However, the State has not cited any authority showing that an "additional grounds" requirement exists under the Act.  Neither are we aware of any such authority.

Regarding the discretional "may" in subsection 55(a), we note our obligation to construe statutes in a manner that avoids constitutional difficulties, injustice, and inconsistencies in application of the law.  
People v. Berg
, 277 Ill. App. 3d 549 (1996).  Under the construction the State urges, a respondent with money could freely obtain an independent evaluation during reexamination proceedings, but an indigent respondent could only request such an evaluation and hope the court obliged.  These circumstances would raise equal protection concerns and, in our view, create an injustice by inconsistently applying the law between indigent respondents and those who can afford to retain an independent evaluator.
(footnote: 1)  We thus construe subsection 55(a) as subject to the rights conferred in subsection 25(e).

II. Constitutionality of Statute Prohibiting Respondent

from Attending Probable Cause Hearing

Botruff next claims the provision in subsection 65(b)(1) of the Act (725 ILCS 207/65(b)(1) (West 2000)) that prohibited him from attending his probable cause hearing is unconstitutional.  He bases this claim on the due process clause of the United States Constitution.  U.S. Const., amend. XIV.

The State contends that Botruff’s claim lacks merit, citing 
In re Detention of Samuelson
, 189 Ill. 2d 548 (2000) (upholding the Act against several constitutional claims).  However, in 
Samuelson
 our supreme court did not issue a blanket pronouncement that the Act’s post-commitment discharge procedures are free from due process problems.  The court simply held that Samuelson, who did not challenge the provision at issue here, personally failed to identify an unconstitutional procedure.  See 
Samuelson
, 189 Ill. 2d at 565.  Botruff has not failed in this manner.  We are convinced that he has identified a due process problem in the Act’s post-commitment discharge procedures.

The due process clause imposes constraints on governmental decisions that deprive persons of liberty or property interests.  
Mathews v. Eldridge
, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).  The clause is flexible and requires "such procedural protections as the particular situation demands."  
Morrissey v. Brewer
, 408 U.S. 471, 481, 33 L. Ed. 2d 484, 494, 92 S. Ct. 2593, 2600 (1972).  "The fundamental requirement of due process is the opportunity to be heard ʻat a meaningful time and in a meaningful manner.ʼ "  
Mathews
, 424 U.S. at 333, 47 L. Ed. 2d at 32, 96 S. Ct. at 902, citing 
Armstrong v. Manzo
, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66, 85 S. Ct. 1187, 1191 (1965).

In 
Mathews
, the United States Supreme Court established three factors to consider when identifying the dictates of due process in a given case.  Those factors are: (1) the private interest that will be affected by the questioned procedure; (2) the risk of the private interest being erroneously deprived through the questioned procedure, and the probable value of additional or substitute procedural safeguards; and (3) the government’s interest, including the function involved and the fiscal and administrative burdens that would stem from "the additional or substitute procedural requirement."  
Mathews
, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903.

Applying the first factor, we note that Botruff’s claim involves a private liberty interest.  A committed person under the Act is confined in a "secure facility" (725 ILCS 207/40(b)(2) (West 2000)) and cannot obtain a discharge without a favorable hearing in the committing court.  There is no question that these circumstances invoke due process protection.  The only question involves the extent of the process that is due.

Regarding the second factor, a committed person faces a considerable risk of his liberty being erroneously deprived when the court conducts his probable cause hearing in his absence.  For example, he cannot consult with his counsel on matters that arise pertaining to probable cause.  Neither can the judge assess his demeanor and credibility through contemporaneous observation.  More importantly, he cannot offer correction if false or misleading statements are made regarding his reexamination.  Instead he is limited to representation by a proxy who did not attend the reexamination and thus may not realize the need for correction.  These concerns are significant because a committed person must prevail at the probable cause hearing or his discharge efforts will terminate unsuccessfully.

The dissent dismisses these concerns by characterizing the probable cause hearing 
as a "limited review" where the meaningful events have already occurred and the respondent’s presence would add noting.  How could a judge’s first-hand observation of the person whose liberty is at stake add nothing?  We realize that no testimony is offered at a probable cause hearing.  As noted above, however, that fact limits commentary on the reexamination to statements from persons who were not present when it occurred.  Such circumstances present a heightened possibility of misleading or erroneous statements about the reexamination.  Although the respondent can discuss the reexamination report with his attorney before the hearing, he cannot predict what the state’s attorney will say about the reexamination at the hearing.  Only by attending the hearing could he meaningfully address such matters with his attorney.

On the matter of additional or substitute safeguards, the Act does provide two other avenues for pursuing a discharge.  Under subsection 65(a)(1), if the Secretary of Human Services (the Secretary) determines at any time that a committed person is no longer sexually violent, the Secretary must authorize the person to file a discharge petition in the committing court.  725 ILCS 207/65(a)(1) (West 2000).  The petition is then adjudicated at a hearing.  725 ILCS 207/65(a)(1), (2) (West 2000).  Also under section 70, a committed person may file a discharge petition at any time, and the matter will be set for a probable cause hearing.  725 ILCS 207/70 (West 2000).

"[H]owever, if a person has previously filed a petition for discharge without the Secretary's approval and the court determined, either upon review of the petition or following a hearing, that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this Section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted."  725 ILCS 207/70 (West 2000).

The State contends that these additional procedures provide adequate safeguards against improper commitment.  We agree that the procedures provide added protection; however, we do not share the State’s view regarding the value of that protection.

Although subsection 65(a)(1) requires the Secretary to authorize a discharge petition upon determining that a committed person is no longer sexually violent, that subsection contains no provisions requiring investigation of the person’s condition to make such a determination.  The person simply has no guidance regarding when (if ever) and how the Secretary will act.
(footnote: 2)   Additionally, the full benefit of the lenient language in section 70 really only applies to first-time petitioners.  If a committed person has already filed an unsuccessful discharge petition without the Secretary's approval, section 70 requires summary dismissal of any subsequent petitions unless a heightened pleading burden is met.  Furthermore, all petitioners under section 70 must still survive a probable cause hearing where their statutory right to attend is unclear.
(footnote: 3)
 The third 
Mathews
 factor requires consideration of the government’s interest, including the fiscal and administrative burdens that would stem from allowing a committed person to attend his probable cause hearing.  The State cites 
In re Detention of Varner
, 315 Ill. App. 3d 626 (2000), where the Appellate Court, Second District, upheld the Act against a different due process challenge.  We note that when the court addressed the third 
Mathews
 factor, it was concerned with the financial and administrative burdens of "requiring an evidentiary hearing in every instance when a committed person files a petition for discharge."  
Varner
, 315 Ill. App. 3d at 636.  This concern clearly does not exist in the instant case.  Botruff is not asking for a hearing the court would, or may, not otherwise conduct.  He simply wants to attend a hearing the court is required to conduct anyway.  The State has not shown that an undue burden would stem from allowing a committed person in Botruff's situation to attend his probable cause hearing.  Neither do we believe such a procedure would be unduly burdensome.

We repeat that due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner."  
Armstrong
, 380 U.S. at 552, 14 L. Ed. 2d at 66, 85 S. Ct. at 1191.  For a committed person under the Act, the probable cause hearing is certainly a "meaningful time."  In light of the concerns discussed above, we are convinced that conducting the hearing 
in
 
absentia
 is not a "meaningful manner" for due process purposes.  We thus hold that the provision in subsection 65(b)(1) prohibiting a committed person from attending his probable cause hearing is unconstitutional.

CONCLUSION

The judgment of the Warren County circuit court is reversed, and the cause is remanded for further proceedings consistent with this disposition.

Reversed and remanded.

SLATER, J., concurs.

LYTTON, P.J., dissents.

PRESIDING JUSTICE LYTTON, dissenting:

I respectfully dissent.  The majority finds that section 25 hearings are essentially the same as section 55 hearings and makes them indistinguishable, thus concluding that the trial judge was required to provide Botruff with an independent evaluator.  The majority also believes that Botruff's exclusion from this limited hearing was unconstitutional.  I disagree with both premises.

Section 25 of the Sexually Violent Persons Commitment Act (the Act) discusses the rights of a person subject to a State's petition for commitment under the Act.  725 ILCS 207/25 (West 2000).  Section 25(e) requires the trial court to appoint an independent evaluator "[w]henever the person 
who is the subject of the petition
 is required to submit to an examination under [the] Act."  (Emphasis added) 725 ILCS 207/25(e) (West 2000).  Section 55 of the Act provides for a periodic reexamination of a "
person who has been committed
" under the Act.  (Emphasis added) 725 ILCS 207/55 (West 2000).  Section 55(a) grants the court discretion to appoint an independent evaluator at the time of the reexamination of a "
person who has been committed
."  (Emphasis added) 725 ILCS 207/55(a) (West 2000).

A.

The majority interprets section 25 of the Act to mandate the appointment of an independent evaluator at hearings following reexamination under section 55 of the Act.  In reaching this conclusion, the majority treats a "person who is the subject of the petition" and a "person who has been committed" identically.  This is an error.

Section 25 is concerned with the respondent's rights at the time of the original petition alleging that the respondent is a sexually violent person.  725 ILCS 207/25(a) (West 2000).  Section 55 is concerned with the respondent's rights upon reexamination, after the petition has been adjudicated and the court has determined that the respondent should be committed.  725 ILCS 207/55(a) (West 2000).  Each section applies to a different proceeding and a different examination with a different purpose under the Act.  We should not lump the same rights granted for pre-commitment proceedings under section 25 into the post-commitment proceedings of section 55.

Moreover, the cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.  
Zunamon v. Zehnder
, 308 Ill. App. 3d 69, 74 (1999).  We should always interpret a statute, if possible, so that no clause or term is rendered superfluous.  
Zunamon
, 308 Ill. App. 3d at 74.  The majority's interpretation fails in this regard.  Section 55(a) grants discretionary authority to appoint an independent evaluator; section 25 mandates one.  The majority renders this distinction meaningless since there would be no need for a discretionary appointment of an independent evaluator if section 25 already required one.  Again, the majority lumps section 25 rights into section 55 without regard to the differing purposes and intent of the two statutory provisions.

B.

The majority rationalizes that its construction of the statute is necessary to avoid an equal protection violation because a respondent with sufficient funds can always obtain an independent evaluator while indigent respondents must rely on the court's discretion.

The U.S. Supreme Court has held that equal protection "does not require absolute equality or precisely equal advantages...[but] it does require...that indigents have an adequate opportunity to present their claims within the adversary system."  
Ross v. Moffitt
, 417 U.S. 600, 612, 41 L. Ed. 2d 341, 352, 94 S. Ct. 2437, 2449 (1974).  The majority's justifiable fear concerning unequal representation for indigents has also been stated more starkly as a due process issue.  "[W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense.  This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake."  
Ake v. Oklahoma
, 470 U.S. 68, 77, 84 L. Ed. 2d 53, 62, 105 S. Ct. 1087, 1093 (1985).

While I am greatly troubled by the potential for unequal treatment of indigent committed persons, I am not ultimately convinced that the statute must fall because of this objection.  The court in 
People v. Finkle
, 214 Ill. App. 3d 290 (1991)
(footnote: 1), found that the failure of the Sexually Dangerous Persons Act (725 ILCS 205/0.01 
et seq
. (West 2000)) to require the appointment of independent evaluators for indigents in post-commitment proceedings did not violate the constitution.  
Finkle
, 214 Ill. App. 3d at 296.  The court noted that the State must only identify and supply indigent defendants with the "basic tools of an adequate defense or appeal."  
Finkle
, 214 Ill. App. 3d at 294, quoting 
Ake v. Oklahoma
, 470 U.S. 68, 77, 84 L. Ed. 2d 53, 62, 105 S. Ct. 1087, 1093 (1985).  The court determined that treating doctors at a confined individual's institution are adequate experts for post-commitment proceedings, unless that individual presents particular facts which indicate that those doctors would not fairly and objectively render assistance.  
Finkle
, 214 Ill. App. 3d at 295-96.  Therefore, allowing the trial court discretion to deny an independent evaluator in the absence of such facts is not unconstitutional.  See 
Finkle
, 214 Ill. App. 3d at 296. 
Finkle
 requires that we find that this provision of the statute is not constitutionally deficient.  We must hold this provision of the statute constitutional, though it may fall short of the laudatory and preferred goal of absolute equality for all committed persons.

C.

The majority also concludes that the provision barring Botruff's attendance at his probable cause hearing violated his due process rights.

After his yearly reexamination, Botruff had three options.  He could have waived his right to a hearing, essentially assenting to further commitment.  See 725 ILCS 207/65(b)(1).  He could also have petitioned for release and would have received a full probable cause hearing.  See 725 ILCS 207/65(b)(1).  His third option was to do nothing, that is, neither waive the right to petition nor petition for discharge.  Botruff chose this third option.  Because of his inaction, the court was required to conduct a limited probable cause hearing, consisting only of a review of the reexamination reports and arguments by counsel, a hearing at which his attendance was prohibited.  No testimony is heard at this type of hearing.  725 ILCS 207/65(b)(1) (West 2000).

In such a limited review, the majority's concerns regarding Botruff's absence are unfounded.  Botruff had ample opportunity to communicate to his counsel any concerns he had regarding the reexamination report or other matters pertaining to probable cause.  Even if he had attended the hearing, the judge would have had no occasion to assess his credibility, since he would not have had an opportunity to testify.  Finally, there was no other testimony regarding his reexamination that he could have "corrected."  His presence at such a limited review would have added nothing.

Had Botruff petitioned for discharge under section 60 or 65 of the Act, the case might be different.  If he were barred from a hearing under those sections, or denied the right to testify or confront witnesses, his exclusion might well implicate constitutional problems.  However, in this very limited hearing his absence causes little risk of error.  In this context, I would find this provision constitutional.

For the above stated reasons, I would affirm the trial court's decision.

FOOTNOTES
1:
The dissent shares our concern over unequal treatment but asserts that 
Finkle
, 214 Ill. App. 3d 290, cures the problem.  
Finkle
, however, is a due process case where the court did not even address an equality problem.  Unlike the statute in the instant case, the statute in 
Finkle
 (
section 9 of the Sexually Dangerous Persons Act (725 ILCS 205/9 (West 2000))) prescribed a uniform evaluation procedure for all respondents regardless of their financial ability.  We fail to see how 
Finkle
 could be controlling here.

2:
Contrast this scenario with subsection 55(a) (725 ILCS 207/55(a) (West 2000)), which mandates post-commitment reexaminations of a committed person's mental condition at specified intervals.

3:
Section 70 does not clarify whether such hearings equate with probable cause hearings under subsection 65(b)(1), which expressly prohibits respondents from attending.  Section 70 does incorporate subsection 65(b)(2), which cannot operate without application of subsection 65(b)(1).

1:
While the 
Finkle
 decision was couched in due process terms, its rationale deals with an issue at the heart of equal protection, i.e. whether an indigent defendant has an adequate opportunity to present his claim.  Compare 
Finkle
, 214 Ill. App. 3d at 296 (Due process requires that indigent defendants be given the "basic tools of an adequate defense or appeal.") with 
Ross
, 417 U.S. 600, 612, 41 L. Ed. 2d 341, 352, 94 S. Ct. 2437, 2449 (Equal protection requires provision of the advantages necessary to ensure that indigent defendants have "an adequate opportunity to present their claims within the adversary system.").  The concern in 
Finkle
 was identical to ours, that is, a committed person with adequate funds can always obtain an independent evaluator, while an indigent person who wants one is subject to the judge's discretion.  See 
Finkle
, 214 Ill. App. 3d at 292.  Thus, I find 
Finkle
 instructive in this case.