No. 3--01--0774

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2002 

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 13th Judicial Circuit

 ) La Salle County, Illinois

Petitioner-Appellee, ) 

 ) No. 85--CF--187

v. ) 

 ) 

ROBERT W. BURNS, ) Honorable                      

 ) James A. Lanuti

Respondent-Appellant. ) Judge, Presiding

_________________________________________________________________

JUSTICE SLATER delivered the opinion of the court:

_________________________________________________________________

The respondent, Robert W. Burns, was adjudicated a sexually dangerous person in 1986 and committed to the custody of the Department of Corrections (DOC).  On May 14, 2001, he filed an application for discharge pursuant to section 9 of the Sexually Dangerous Persons Act (Act) (725 ILCS 205/9 (West 2000)).  Attached to his petition was a motion for an independent psychiatric examination, a motion to strike Dr. Mark Carich's socio-psychiatric report, and a request for appointment of an independent guardian.  The trial court denied the motions.  A jury found that the respondent was still sexually dangerous and rejected his request for release.  On appeal, the respondent argues that: (1) the trial court erred in denying his motion for an independent psychiatric examination; (2) the court erroneously denied the motion to strike Dr. Carich's report; (3) the trial court erred in denying his motion for appointment of independent guardian; (4) the court's refusal to tender the jury instructions offered by defense counsel was improper; and (5) the State failed to prove that he was still sexually dangerous beyond a reasonable doubt.  We reverse in part, affirm in part and remand the cause for further proceedings.    

BACKGROUND

The respondent filed his second application for discharge in May of 2001.  Attached to his application were several 
pro
 
se
 motions.  First, the respondent moved for an independent psychiatric examination, alleging that psychiatrist Ijaz Jatala was not a licensed psychiatrist and was biased.  No supporting documentation was included with the motion.  The respondent's second motion was a request to strike the socio-psychiatric report submitted to the court pursuant to the Act.  In this motion, the respondent claimed that the report was insufficient because Dr. Carich was not a licensed psychologist and because no sociologist participated in its preparation.  In his third motion, the respondent argued that the DOC, as his guardian, was not acting in his best interests because of undue bias against him.  

After hearing arguments, the trial court denied the respondent's request for an independent examination.  The court further determined that Dr. Carich's psychological report met the requirements of the Act and denied the motion for an independent guardian.

At trial, Dr. Carich testified that he has a Ph.D. in counseling and received his undergraduate diploma in psychology.  He has coordinated the DOC's sexual offender treatment program for more than 10 years and has testified in at least 80 cases involving sexually dangerous persons.  Dr. Carich testified that of those cases, he has supported 19 committed persons for discharge.  

The respondent was placed in the DOC program in 1986 for admittedly abusing more than 40 victims.  His victims ranged in age from infant to nine years old.  Dr. Carich testified that the respondent had made progress since his admission.  He cooperated with the DOC staff and regularly attended all group meetings.  However, in 1998, the respondent was suspended from the program for violating DOC rules by engaging in sexual intercourse with another member of his group.  The respondent was later reinstated.  Shortly after his reinstatement, he voluntarily dropped out of the program.  Dr. Carich did not believe that the respondent was ready to return to society.  

The socio-psychiatric report prepared by Dr. Carich and signed by Dr. Jatala, Social Worker Nancy Henderson and Warden Michael Holmes was not entered as evidence.  At the conclusion of the trial, the jury found that the respondent was still sexually dangerous and denied his application for recovery.

ANALYSIS

On appeal, the respondent first claims that the trial court erred in denying his motion for an independent psychiatric examination.  He claims that he has a right to an independent examination under the due process clause of the United States Constitution.  U.S. Const., amend. XIV.

The due process clause of the federal constitution imposes constraints on governmental regulations that deprive persons of liberty or property interests.  
Mathews v. Eldridge
, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).  The right to due process of law is the right to a fundamentally fair trial.  
Chambers v. Mississippi
, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973).  Procedural due process guarantees that a defendant has the right to present relevant, competent evidence and that the State must take steps to ensure that an indigent defendant has a fair opportunity to present his defense.  
Ake v. Oklahoma
, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087 (1985).  The State may not maintain a strategic advantage over a defendant when that advantage casts a pall on the proceedings.  
Ake
, 470 U.S. 68, 84 L. Ed. 2d 53, 105 S. Ct. 1087. 

When considering a due process issue, courts must consider three factors.  Those factors are: (1) the liberty or property interest with which the State has interfered; (2) the risk of erroneous deprivation of the interest through the procedures already in place and the probable value of additional or substitute procedural safeguards; and (3) the effect the administrative and fiscal burdens would have on the State.  
Mathews
, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893.

There is little question that the respondent's right to liberty is jeopardized under the Act.  See 
People v. Trainor
, 196 Ill. 2d 318, 752 N.E.2d 1055 (2001).  Analysis of the second factor, however, is more complex.  

At any stage in a commitment proceeding, a respondent is at serious risk of his liberty being erroneously deprived.  Consequently, he must be provided the essential protections available at a criminal trial, 
i.e.
, the right to a jury, representation by counsel and proof of sexual dangerousness beyond a reasonable doubt.  
People v. Olmstead
, 32 Ill. 2d 306, 205 N.E.2d 625 (1965)
; 
People v. Pembrock
, 62 Ill. 2d 317, 342 N.E.2d 28 (1976).  These protections are equally available at a recovery proceeding.  See 
Trainor
, 196 Ill. 2d 318, 752 N.E.2d 1055.  

Under notions of due process, we find that these rights include the right to an independent psychiatric examination.  
Cf.

People v. Knuckles
, 165 Ill. 2d 125, 650 N.E.2d 974 (1995) (holding that, as a matter of due process, an indigent defendant in a criminal proceeding is entitled to psychiatric assistance when his mental capacity is at issue);
 
People v. Botruff
, No. 3--01--0223 (June 6, 2002) (finding that a statutory right to the appointment of an independent expert exists under the Sexually Violent Persons Act (725 ILCS 207/1 
et
 
seq.
 (2000))).  The finding necessary to obtain release under the Act requires the testimony and analysis of an expert in the field of sexually dangerous behavior.  Disallowing a request for an independent examination places the respondent at an extreme disadvantage.  The jury is left only with the State's expert opinion as to the respondent's mental state.  Typically, that expert testifies that the respondent is still sexually dangerous.  Unless the respondent is provided an independent psychiatric expert, he is virtually incapable of rebutting the State's evidence.  

The State contends that the respondent is allowed to bring a motion for an independent examination at an application for discharge proceeding and that this procedure provides an adequate safeguard against improper commitment.  We recognize that under current commitment procedures, the respondent can move for the appointment of an independent psychiatrist.  See generally 
People v. Finkle
, 214 Ill. App. 3d 290, 573 N.E.2d 381 (1991).  However, such motions are often denied by the court because the respondent fails to provide evidence of bias or prejudice.  
Finkle
, 214 Ill. App. 3d 290, 573 N.E.2d 381 (requiring committed persons to set forth particular facts demonstrating that treating professionals employed by Department would not fairly and objectively render assistance).  Due to the respondent's lack of means with which to prove such a theory, we find this "additional safeguard" inadequate.

The third factor involves consideration of the fiscal and administrative burdens that would arise from providing a committed person with an independent expert examination.  We realize that the imposition of the right to an examination at the recovery stage imposes a significant burden on the State.  The Act includes no limitation on the number of applications for recovery that can be filed or the time between each filing.  However, we are not in a position to alter these oversights.  See 
Trainor
, 196 Ill. 2d 318, 752 N.E.2d 1055 (Act's impact on State resources is a legislative matter for the General Assembly to address).  Nor do we find the appointment of an independent expert unduly burdensome.  Accordingly, we hold that the trial court violated the respondent's right to due process in denying his request for an independent psychiatric examination.  

In light of our finding, it is unnecessary to discuss the remaining issues in this case.  However, in the interest of judicial economy, we will address the respondent's challenge against Dr. Carich's report.    

The respondent claims that the trial court erred in denying his motion to strike the socio-psychiatric report.  Specifically, the respondent argues that Dr. Carich is not qualified to prepare the report because he is not a licensed psychologist.  He further claims that the report is defective because it was not signed by a sociologist.  

After a person has been found to be sexually dangerous and has been committed to the custody of the DOC, he may apply for conditional release or discharge pursuant to section 9 of the Act.  Section 9 provides that the DOC must submit a socio-psychiatric report "prepared by the psychiatrist, sociologist, psychologist and warden of, or assigned to, the institution wherein such applicant is confined."  725 ILCS 205/9 (West 2000). The court shall consider the report and any other relevant information submitted by the respondent.
(footnote: 1)  725 ILCS 205/9 (West 2000).

The Act does not impose any licensing requirements for psychologists who sign the socio-psychiatric report, and we will not engraft a licensing qualification where such a requirement is not clearly apparent.  It should also be noted that Dr. Carich has been found qualified to render opinions for purposes of recovery applications in other cases.  See 
People v. Sizemore
, 311 Ill. App. 3d 917, 726 N.E.2d 204 (2000); 
People v. McDougle
, 303 Ill. App. 3d 509, 708 N.E.2d 482 (1999).  We therefore reject the respondent's argument that Dr. Carich's report did not satisfy section 9 of the Act.  See 
Sizemore
, 311 Ill. App. 3d 917, 726 N.E.2d 204.  

Any claim that Nancy Henderson fails to fulfill the requirements of section 9 is equally misplaced.  The abbreviations after Henderson's name, M.S.A., L.S.W., and L.C.S.W., indicate that she has a master's degree in social work and is a licensed clinical social worker.  The trial court therefore did not err in denying the respondent's motion to strike Dr. Carich's report. 

CONCLUSION

The judgment of the circuit court of La Salle County is reversed in part, affirmed in part and remanded for further proceedings consistent with this opinion.

Reversed in part, affirmed in part; cause remanded.

HOLDRIDGE, J., concurs.

PRESIDING JUSTICE McDADE concurs in part and dissents in part:

The majority finds (1) that the trial court violated the respondent's right to due process in denying his request for an independent psychiatric examination, and (2) that the court did not err in denying the respondent's motion to strike Dr. Carich's socio-psychiatric report.  I concur in the first finding and agree that the matter should be reversed and remanded for all of the reasons set forth in the majority opinion and, for the reasons that follow, I dissent from the second finding.

I dissent because of my belief that the State's threshold obligation in a recovery proceeding — the socio-psychiatric report — has not been met because I do not think Dr. Mark Carich satisfies the statutory requirement that treatment be accorded and the respondent be assessed in the report by a "psychologist."  More specifically, I agree that the statute does not expressly require that the psychologist be licensed, but I do think it requires him to 
be
 a psychologist.

The Sexually Dangerous Persons Act (Act) (725 ILCS 205/1.01 
et seq. 
(West 2000)), does not contain an explicit statement of purpose.  The courts have, however, determined and described the legislative purpose.  The most recent statement of that purpose by the Illinois Supreme Court is found in 
People v. Trainor, 
196 Ill. 2d 318, 752 N.E.2d 1055 (2001).

"The Act's purpose is twofold: (1) to protect the public by sequestering a sexually dangerous person until such a time as the individual is recovered and released, and (2) to subject sexually dangerous persons to treatment such that the individual may recover from the propensity to commit sexual offenses and be rehabilitated."  
Trainor,
 196 Ill. 2d at 323-24, 752 N.E.2d at 1058-59.

Sexually dangerous persons are statutorily defined as having a "mental disorder" coupled with criminal propensities to commit sex offenses and demonstrated propensities toward acts of sexual assault or acts of sexual molestation of children.  725 ILCS 205/1.01.  The determination of sexual dangerousness for purposes of commitment requires an examination and evaluation by a "qualified psychiatrist" as defined in 725 ILCS 205/4.01 and a jury finding beyond a reasonable doubt.

The 
Trainor 
court noted that the 1963 amendments to the Act included a provision quashing all outstanding indictments that served as the basis for the civil commitment proceeding. The court observed that the amendment "altered the aim of the Act because it focused on the rehabilitative treatment of the offender rather than punishment," and noted that "under the Act, the State has a statutory obligation to provide care and treatment for persons adjudged sexually dangerous.  This care is designed to effect recovery in a facility set aside to provide psychiatric care."  
Trainor, 
196 Ill. 2d at 324-25, 752 N.E.2d at 1059, citing 
People v. Cooper,
 132 Ill. 2d 347, 547 N.E.2d 449 (1989); 
Allen v. Illinois, 
478 U. S. 364, 106 S.Ct 2988 (1986).

I believe we must consider all of the issues raised by Burns in the context of this statutory purpose and with the obligation of strict construction and application of the statute.  
People v. Bruckman, 
33 Ill. 2d 150, 210 N.E.2d 537 (1965); 
People v. Johnson, 
322 Ill. App. 3d 117, 749 N.E.2d 402 (2001), rehrg denied.

Although the recovery proceeding has previously been treated as qualitatively different from the initial determination and carrying a lower standard, our supreme court held in 
Trainor
 that in this proceeding as well, the State continues to bear the burden of proving beyond a reasonable doubt that the applicant is still sexually dangerous, expressly abrogating ten published appellate court decisions that held to the contrary.

The threshold requirement for the State in meeting that burden is a socio-psychiatric report responding to the application showing recovery, in which the applicant represents that he has recovered from the mental disorder which resulted in his original commitment.  The statute tells us that the report "shall be prepared by the psychiatrist, sociologist, psychologist 
and 
warden of, or assigned to, the institution wherein such applicant is confined." (Emphasis added.)  725 ILCS 205/9.

After carefully fulfilling our obligation to strictly construe and apply the statute with regard to the psychiatrist, the majority then ignores it to find not only that the statute does not require a licensed psychologist but also decide that the legislature did not really mean that it wanted a real psychologist to work with and evaluate these patients and participate in the preparation of the report — a person with a bachelor's degree in psychology and a master's and doctorate in 
educational
 counseling, not in psychology, would be just fine.  I think this holding, when we give "psychologist" its usual and customary meaning, is contrary to the plain language of the statute and severely undercuts the legislative purpose and the weight of the report in sustaining the State's burden of proof.  I wonder if any of us on this panel, being diagnosed with a mental disorder and confined until we have recovered, would be content to be treated and evaluated by a school or family counselor.  Or would want the trial court to rely on a report based on the assessments of a person who does not possess the qualifications called for in the statute.

Carich is not and has never been a "psychologist" and has never had his psychological competence tested.  I would find that he does not satisfy the plain language of the statute and that he is not trained or demonstrably competent to perform the evaluations and draw the conclusions called for in the socio-psychiatric report. 

The majority also rejects respondent's claim that the report was not signed by the statutorily-required sociologist.  See 725 ILCS 205/9 (West 2000).  They find no error because the report was signed by a social worker, but they advance no reason for their apparent conclusion that there is no difference between the skills, functions, and training of sociologists and social workers.

As previously indicated, I agree that the outcome in the trial court must be reversed and the case remanded for a new trial.  Because of what I believe are significant concerns about the qualifications of Dr. Carich to provide the treatment and make the assessments called for in the statute and because I see no basis for deciding that the legislature did not intend for services to be provided and the report to be signed by the sociologist they specified, I would require the circuit court on remand to carefully assess the adequacy and legal sufficiency of the socio-psychiatric report to satisfy the State's burden of proving beyond a reasonable doubt that respondent remains sexually dangerous.   I would reverse the order denying the motion to strike the report and, therefore, dissent on the majority's decision to the contrary.

FOOTNOTES
1:  In this case, the report was submitted to the court but

was not presented to the jury.